195 N.J. Super. 575 (1984)
481 A.2d 286
DAVID LABREE, PLAINTIFF-APPELLANT-RESPONDENT,
v.
MILLVILLE MANUFACTURING, INC., WAWA, INC., DEFENDANT-RESPONDENT, AND GASKILL CONSTRUCTION COMPANY, DEFENDANT-APPELLANT, AND J.J. NUGENT AND JOHN J. DUNN CONSTRUCTION COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1983.
Decided August 8, 1984.
*578 Before Judges FRITZ, FURMAN and DEIGHAN.
Walter T. Wolf argued the cause for appellant David LaBree (Farr, Reifsteck, Wolf & Ware, attorneys; David W. Morgan, on the brief).
John P. Morris, argued the cause for respondent Millville Manufacturing, Inc.  Wawa, Inc. (Horuvitz, Perlow, Morris & Baker, attorneys).
Anthony D. Buonadonna argued the cause for appellant Gaskill Construction Company (Buonadonna, Benson & Speziali, attorneys).
John A. Fratto, argued the cause for appellant J.J. Nugent and John J. Dunn Construction Company (Fratto, Little, Alessi & Abbott, attorneys).
The opinion of the court was delivered by FRITZ, P.J.A.D.
This is a complex matter, involving three consolidated interlocutory appeals and entailing, among other things, consideration of the reach of N.J.S.A. 2A:42A-2. It is made more difficult by the failure of the trial judge to report findings of fact on crucial issues, contrary to the mandates of R. 4:46-2 and R. 1:7-4. Some of these findings appear in colloquy with counsel on the summary judgment motions involved but we do not consider this compliance with the Rules.[1]
The basic action sounds in negligence. It charges defendants with negligently permitting "large quantities of refuse" to be deposited in an artificial lake to whose creation they contributed, resulting in serious injuries to plaintiff when he was swimming in this lake. The events leading up to this occurrence are set forth in the letter opinion of the trial judge and appear to be uncontested and uncontestable. We borrow from that letter:

*579 The State of New Jersey in the early 1970's constructed an entirely new four-lane limited access highway known as Route 55 running in a north-south direction from Port Elizabeth in Cumberland County to U.S. Route 40 in Gloucester County. With respect to the portion of the highway critical to this case the general contractor was a joint venture known as John J. Dunn and J.J. Nugent Co., hereinafter known as Dunn-Nugent. During the construction of this entirely new right of way it became necessary to obtain sand and gravel for use on the road bed. This was obtained by purchase from defendant Millville Manufacturing Co. (later renamed Wawa). Millville owned extensive holdings adjacent to the right of way of Route 55.
The proposal upon which the contract of construction called for a specified amount of "borrow excavation" including the materials to be obtained from Millville. The job of procurement as well as other portions of the work was sub-contracted by Dunn-Nugent to defendant Gaskill.
Gaskill entered into an agreement with Millville which, tersely stated, permitted Gaskill to excavate on Millville's land to the extent necessary. This excavation was of sufficient magnitude that it resulted in the creation of a lake of approximately 20 acres. This lake was and has been used by members of the public for swimming and bathing but not on a formal organized basis. Work upon the project was completed in 1974.
....
On July 7, 1977, plaintiff went swimming in the lake, dove into the water, hit his head on an obstruction and as a result thereof is a quadraplegic. He then filed suit against Millville as owner, Dunn-Nugent as general contractor, and Gaskill as the responsible sub-contractor.
All defendants moved for summary judgment. The motion of Millville[2] was granted and those of Gaskill and Dunn-Nugent were denied. An order was entered granting judgment to Millville on plaintiff's complaint and defendants' cross-claims "based on the Landowner's Liability Act [N.J.S.A. 2A:42A-2 et seq.]." Dunn-Nugent's motion for summary judgment "based on its relationship with defendant Gaskill" was denied as were Dunn-Nugent's motions for summary judgment for indemnification by Gaskill and Millville. Gaskill's motion for summary judgment "based on the Landowner's Liability Act" was denied. Leave to appeal was granted plaintiff and defendants Dunn-Nugent and Gaskill and these appeals were consolidated. We now affirm.
The particular statute directly implicated is N.J.S.A. 2A:42A-3a. It reads as follows:

*580 a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes;
....
Plaintiff argues in its appeal brief that an issue of fact exists respecting whether the lake site constitutes premises of a nature sufficient to qualify for immunity under the statute. In passing we observe that "premises" is not defined in the statute. In a second point plaintiff argues the mirror image of the earlier point urging that under Harrison v. Middlesex Water Company, 80 N.J. 391 (1979) judgment declaring the nonimmunity of Millville should have been entered as a matter of law. After filing a second and third brief answering the cross-appeals of defendants Dunn-Nugent and Gaskill, plaintiff filed a reply brief to the answering brief of Millville in which it asserted two additional points. In this reply brief plaintiff argued that the "disputed existence of various artificial debris submerged in the lake on the property in question" created a fact question respecting whether "the injury-causing instrumentality constituted a `condition of the land' within the meaning" of the statute. He also urged that the statute should not provide immunity for a landowner "who has violated specific contractual, industrial, regulatory and statutory schemes specifically designed for public safety."[3] Dunn-Nugent in its brief argues that summary judgment should have been entered with respect to it inasmuch as a general contractor is not liable for the negligent acts of an independent contractor and that no such liability was imposed by the terms of any contract. It also *581 insists that its motion for indemnification by Gaskill should have been granted. Finally, recognizing Gaskill's insistence that since it was an "occupier" of the land it, too, was immune under the statute, Dunn-Nugent avers that if Gaskill is immune, it should be immune. Gaskill's one argument, presented in two points, is, as noted above, that since it was an occupier of the land, it should be entitled to the same immunity as Millville.
We turn first to plaintiff's appeal. It is now beyond cavil that the immunity of the statute does not extend to owners or occupiers of land situated "in residential and populated neighborhoods," Harrison v. Middlesex Water Company, supra, 80 N.J. at 397, but was intended for "undeveloped, open and expansive rural and semi-rural properties," id. at 400. The question of whether any one plot of land fits such a definition would seem usually to be a fact question. However, our careful review of this record side by side with the findings of the trial judge with regard to facts (which are not materially disputed although some conclusionary statements contrary to the undisputed or indisputable facts are asserted in the record) persuades us, as it apparently persuaded the trial judge, that the minds of reasonable men could not differ regarding the qualification for immunity of the premises in question. These premises are an example of "large tracts or areas of natural and undeveloped lands located in thinly populated rural or semi-rural areas ... having all or most of the characteristics of such ... lands, particularly as to size, naturalness and remoteness or insulation from populated areas." Harrison v. Middlesex Water Company, supra, 80 N.J. at 399. We arrive at this conclusion aware of the injunction of Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954) that we must give the benefit of all reasonable inferences and any doubt to the opponent of a motion for summary judgment. Neither the statute nor Harrison requires the owned premises to be completely *582 isolated from civilization. As a matter of fact, the statute does not expressly even confine the immunity to rural and semirural areas; this was done by judicial construction. This being so we are satisfied that even giving plaintiff the benefit of the doubt and allowing the inferences for which it now contends, including its valiant efforts to analogize the facts in this case with those in Harrison, the premises come well within the legislative protection intended for the owner.
We are reassured in our convictions in this direction by considering the teachings of Harrison. The Court might well have been speaking of the Millville premises when it said:
Owners of such properties would have difficulty in defending their lands from trespassers or, indeed, even in taking precautions to render them safe for invited persons, engaging in these kinds of energetic outdoor activities. The public policy to afford these property owners a modicum of protection from tort liability may be thought of as one which would encourage such owners to keep their lands in a natural, open and environmentally wholesome state. This is an important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State. It is a concern well known to the Legislature and the preservation of such lands is very much an integral part of our governmental and public policy. See, e.g., N.J.S.A. 13:8A-1 et seq. (Green Acres Land Acquisition Act of 1961); N.J.S.A. 13:8A-19 et seq. (Green Acres Land Acquisition Act of 1971); N.J.S.A. 13:8A-35 et seq. (Green Acres Land Acquisition and Recreation Opportunities Act); N.J.S.A. 4:1B-1 et seq. (Agricultural Preserve Demonstration Program Act); N.J.S.A. 54:4-23.1 et seq. (Farmland Assessment Act). [Harrison, supra, 80 N.J. at 400.]
Nor do we think that "artificial debris submerged in the lake" should defeat the immunity. The mention of "condition of the land" in N.J.S.A. 2A:42A-3 is an additional immunity separate and apart from the general immunity relieving a landowner of a duty to keep the premises safe for entry or use by others for sport and recreational activities. There is no qualification on this immunity. Our view in this respect is reinforced by the fact that N.J.S.A. 2A:42A-4 contemplates certain express circumstances, such as willful or malicious activities, in which the immunity will be abrogated. To the extent that Diodato v. Camden County Park Commission, 162 N.J. Super. 275 (Law Div. 1978) is to the contrary it is disapproved. We note that there is no suggestion at all in the *583 record of any malicious or willful activity or other conduct sufficient to invoke Section 4 nor does anyone suggest its invocation.
The same is to be said for the argument of plaintiff that a landowner who has violated "specific contractual, industrial, regulatory and statutory schemes specifically designed for public safety" should lose the immunity conferred by the statute. Such an interpretation contravenes not only the plain language of the statute, but the inference that we drew above respecting Section 4 as well as the philosophy of Harrison. The point urged by plaintiff may have social usefulness. But this is for the Legislature to say or is something that should be implemented by enforcement of the "contractual, industrial, regulatory or statutory obligations."
We turn to Gaskill's claim that it, too, is entitled to immunity. We think not. Harrison points out that the statute is not designed or intended to protect everyone, that immunity is not favored in the law and that statutes such as the one in question should be given narrow range. 80 N.J. at 399, 401. Thus viewed, we believe use of the word "occupant" in the statute signifies an intent to provide immunity for an entity with a degree of permanence in the occupancy, not merely one who is using the property, as was the case with Gaskill. It "occupied" the property not really as one in occupancy but rather as one removing dirt and gravel from it. Gaskill had no more than the license to go upon the land to accomplish its contractual purpose. Had it chosen to become a squatter, there is not doubt that an action by Millville for possession would have succeeded. In such circumstance, we are unwilling to equate the Gaskill "occupancy" with that provided for in the statute.
With respect to the claim of Dunn-Nugent that summary judgment should have been entered in its favor as against the plaintiff inasmuch as a general contractor is not liable for the negligent acts of an independent contractor, the record causes us to believe that factual issues exist respecting the supervision *584 of Gaskill by Dunn-Nugent. For instance, there is evidence that a representative of Dunn-Nugent visited the Gaskill excavation site "often." Significantly, the contract between Dunn-Nugent and Gaskill required of the latter "maintenance of satisfactory job progress in accordance with job needs and/or our superintendents [sic] demands." (Emphasis supplied.) The relationship between Dunn-Nugent and Gaskill and the viability of Dunn-Nugent's argument in terms of that relationship implicate fact questions which must be decided by a trier of fact. Summary judgment is inappropriate in such circumstances.
The same is to be said with regard to the indemnification issue as between Dunn-Nugent and Gaskill. The complex contractual relationship between Dunn-Nugent and the State including the absolute obligations of Dunn-Nugent thereunder, as well as the contractual relationship between Dunn-Nugent and Gaskill including that which appears to be an indemnification clause, considered in the light of common law indemnification principles as well as statutory and code obligations (see Bortz v. Rammel, 151 N.J. Super. 312 (App.Div. 1977), certif. den. 75 N.J. 539 (1977)) all ineluctably suggest fact issues.
Affirmed. We remand for trial. We do not retain jurisdiction.
NOTES
[1] Fortunately for counsel and their respective clients, this need not cost more than inconvenience to this court. There is sufficient, when extracted from the colloquy, to permit our consideration of the several problems.
[2] We adopt the nomenclature used by the trial judge in his opinion letter.
[3] In a motion on which we have reserved decision Millville has moved to suppress the reply brief or in the alternative to allow Millville to respond to it. Although there is some doubt whether the issues raised in the reply brief were brought before the trial judge, whereby we might refuse to consider them here, Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973), we have determined to dispose of all the issues prior to our remand for trial. Accordingly, Millville's motion will be denied.