**Edward KANTNER, Administrator of the Estate of Paul Kantner**

**and**

**Paul J. Morin, Administrator of the Estate of Albert D. Morin**

v.

**COMBUSTION ENGINEERING, et al.**

**Nos. C–87–354–L, C–87–367–L.**

United States District Court, D. New Hampshire.

Dec. 27, 1988.

Phillips, Gerstein, Holber, LaFlamme, Migliori & Barron by Gerard R. LaFlamme, Jr., Daniel T. Chabot, Haverhill, Mass., for Kantner.

Gallagher, Callahan & Gartrell by Steven J. McAuliffe, Concord, N.H., for Shaw; Androscoggin Elec. Corp.; Pontook Hydro Partners, Ltd.

Stark & Peltonen by Rodney L. Stark, Manchester, N.H., for E.C. Jordan Co.

Boynton, Waldron, Doleac, Woodman & Scott by Ralph R. Woodman, Jr., Portsmouth, N.H., for Pine Ridge School.

Devine, Millimet, Stahl & Branch by Bartram C. Branch, Manchester, N.H., for Combustion Engineering, Inc.; Yankee Const. Corp.; H.E. Sargent, Inc.

## ORDERS ON MOTIONS FOR SUMMARY JUDGMENT

LOUGHLIN, District Judge.

The plaintiffs in these actions seek damages arising out of the drowning deaths of Paul Kantner and Albert D. Morin in separate incidents near the base of the Pontook Dam in Dummer, New Hampshire. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Three of the defendants, Combustion Engineering, Inc. ("Combustion"), H.E. Sargent, Inc. ("Sargent"), and Yankee Construction Corp. ("Yankee"), have moved for summary judgment on all of the plaintiffs' claims except those alleging willful or intentional acts, contending that they are entitled to the limited immunity provided by the New Hampshire Recreational Use statutes, RSA 212:34 and RSA 508:14 I. The plaintiffs oppose the motions, contending that the Recreational Use statutes do not apply and that they violate the New Hampshire constitution.

The moving defendants were involved in the Pontook Hydroelectric Project ("the Project") including the reconstruction of the Pontook Dam, when the drownings occurred in May and June, 1986. The Federal Energy Regulatory commission ("FERC") initially licensed defendant Robert Shaw to construct the Project. Before the drownings, the license had been transferred to Pontook Hydro Partners, Ltd., which became Pontook Hydro Limited Partnership ("Pontook Hydro"), and the New Hampshire Water Resources Board ("NHWRB"). By the time of the drownings, the general partner of Pontook Hydro was Pontook Funding Corp., a wholly-owned subsidiary of Combustion. Combustion contracted to construct and operate the Project and as the Turnkey Contractor maintained overall responsibility for the construction of the Project. Combustion contracted with Sargent for construction of the Project. Sargent subcontracted with Yankee to perform construction work.

The plaintiffs claim that the moving defendants were negligent in their operations at the Project site and in failing to warn of the dangers at the Project site, thereby causing the injury and death of Paul Kantner and Albert Morin. The plaintiffs also contend that the moving defendants intentionally caused the injury and death of Paul Kantner and Albert Morin and that they willfully or maliciously failed to guard or warn against a dangerous condition, which caused the injury and death of Paul Kantner and Albert Morin.

■ The moving defendants contend that they are entitled to summary judgment on the negligence counts because of two New Hampshire Recreational Use statutes. RSA 212:34 provides:

I. An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for ... water sports ..., or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in paragraph III hereof.

II. An owner, lessee or occupant of premises who gives permission to another to ... use said premises for water sports ... does not thereby:

(a) Extend any assurance that the premises are safe for such purpose, or

(b) Constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed....

III. This section does not limit the liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or

(b) For injury suffered in any case where permission to ... use for water sports ... was granted for a consideration other than the consideration, if any, paid to said landowner by the state....

RSA 508:14 provides:

An owner, occupant, or lessee of land, ... who without charge permits any per-

son to use land for recreational purposes ... shall not be liable for personal injury or property damage in the absence of intentionally caused injury or damage.

Summary judgment is proper only if, viewing the record in the light most favorable to the nonmoving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Early v. Eastern Transfer*, 699 F.2d 552, 554–55 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983); *see also* Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit ..." are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party initially must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). For the present motions, only facts relevant to the applicability of the Recreational Use statutes are material.

To prevail, the moving defendants must demonstrate that one or both of the Recreational Use statutes apply to them in these actions. RSA 508:14 provides immunity for an "owner, occupant, or lessee of *land* ... who ... permits any person to use *land* for recreational purposes...." RSA 508:14 I (emphasis added). RSA 508:14 II also provides immunity only for owners of land. RSA 212:34, however, specifically provides immunity for an "owner, lessee or occupant of *premises*" and specifically mentions water sports. *See* RSA 212:34 (emphasis added). Considering that Recreational Use statutes normally are construed narrowly since they are "in derogation of common law rules of tort liability," *Ducey v. United States*, 713 F.2d 504,

510 (9th Cir.1983); *see also Hill v. Dobrowolski*, 125 N.H. 572, 575, 484 A.2d 1123 (1984) (court will not construe a statute as abrogating the common law unless the statute does so clearly), this court interprets RSA 508:14 as not covering these actions. The decedents were swimming and canoeing in a river and were not using *land* for recreational purposes.

■ Under RSA 212:34, the moving defendants initially must be owners, lessees, or occupants of premises. They do not contend that they are owners of the premises. Nor have they established that they are lessees. Combustion is merely the parent corporation of the general partner of the lessee. Combustion has not demonstrated why it also should be treated as a lessee despite being a separate entity. *Cf. McGeehan v. Bank of New Hampshire*, 123 N.H. 83, 86, 455 A.2d 1054 (1983) ("It is well established that business organizations such as the Bank, and its holding company are separate entities."); *Conway v. Jobin*, 115 N.H. 496, 498, 345 A.2d 903 (1975) (the corporate veil "is not permitted to be cast aside for the convenience of those using it."). The other moving defendants have no claim to being lessees.

Nevertheless, the moving defendants are "occupants" under RSA 212:34. The plaintiffs do not dispute that the moving defendants "were actively engaged in construction that created an extremely dangerous condition." Plaintiffs' Memorandum (doc. # 31 in C–87–354–L) at 24. Admittedly, the test for whether an entity is an "occupant" is not necessarily whether that entity is "in control," as the defendants argue. The cases cited by the moving defendants using an "in control" standard involved statutes that included both occupants and those "in control" within their protection. *See Sublett v. United States*, 688 S.W.2d 328, 329 (Ky.1985); *McCain v. Commercial Union Insurance Co.*, 592 F.Supp. 1, 2 (W.D.La. 1983).

Faced with a similar statute to RSA 212:34, the Seventh Circuit ruled that an occupant is "one who has the actual use of property without legal title, dominion or

tenancy.... [T]he term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner." *Smith v. Sno Eagles Snowmobile Club*, 823 F.2d 1193, 1197 (7th Cir. 1987) (defendants, who constructed and groomed snowmobile trails on land they did not own or lease, are occupants; granting of summary judgment affirmed). The court observed that both Black's Law Dictionary and Webster's Third New International Dictionary consider an occupant to have "actual use" and possession of the premises. *Id.* at 1197 n. 7; *see also Hall v. Turtle Lake Lions Club*, 431 N.W.2d 696 (Wisc.Ct.App.1988) (quoting *Smith* and its "actual use" language in affirming summary judgment for defendant who sponsored a fair on the park grounds where plaintiff was injured.)

The *Smith* court distinguished *Labree v. Millville Mfg.*, 195 N.J.Super. 575, 481 A.2d 286 (App.Div.1984), where the court had ruled that a subcontractor who had excavated gravel from an area that became a man-made lake was not an occupant of the lake under a New Jersey Recreational Use Statute. The *Labree* court rules that an occupant was "an entity with a degree of permanence in the occupancy, not merely one who is using the property, as was the case with [the subcontractor]. It 'occupied' the property not really as one in occupancy, but rather as one removing dirt and gravel from it." *Labree*, 481 A.2d at 291. The *Smith* court noted that the subcontractor in *Labree* was not an occupant because there was no permanence to the occupancy and the subcontractor was merely using the property to remove dirt and gravel. Also the "creation of a lake was not intended to be a part of the commercial venture." *Smith*, 823 F.2d at 1197.

■ *Smith* and the dictionary definitions present a definition of an "occupant" as one who possesses and has actual use of the premises. Combustion easily qualifies as an occupant under this standard. It was given control of the Project and the work performed on the Project, including responsibility for access to and maintenance of the Project site. In addition, Combustion

employees worked full time on the Project, in supervisory positions, and Combustion is responsible for operation and maintenance of the Project through December, 2001.

Sargent was responsible for on-site construction of the hydroelectric facility. It was obligated to furnish construction services, materials, equipment and supplies to complete the work and to store materials and equipment at the Project site. Unlike the defendant in *Labree*, Sargent was responsible for construction of the Project and not just removing dirt and gravel. Sargent also had a far more substantial "occupancy" of the Project site, being responsible for a construction project that lasted for over a year, than did the defendant in *Labree*, who merely excavated gravel to be used elsewhere.

In *Fanny v. Pike Industries*, 119 N.H. 108, 398 A.2d 841 (1979), the New Hampshire Supreme Court affirmed the dismissal of an action under RSA 212:34 by an off-highway recreational vehicle (OHRV) operator who was injured when he drove into a culvert where the defendant was constructing alterations to a highway interchange. Although the *Fanny* court provided almost no analysis, its decision suggests that a general contractor, in charge of construction on public land, can be covered by the Recreational Use statute, and therefore can be an occupant. Here, where Sargent was the general contractor in a large construction project, it was an occupant of the premises.

Yankee was the subcontractor responsible for providing equipment, labor, and materials for construction of various parts of the Project, including the dam, and presents a closer call. It maintained considerable equipment and personnel on the Project site for over a year. Although only the subcontractor, Yankee was as involved in the Project as was the defendant in *Fanny*. Yankee also was more generally involved in a construction project than was the defendant in *Labree*. As a result, Yankee also was an occupant of the premises.

The plaintiffs argue that the defendants misconstrue the term "occupant" and that factual questions preclude resolution of the

occupancy issue on summary judgment. However, they do not dispute any facts presented by the defendants and fail to indicate why the moving defendants are not occupants except to state that "this is not a case where defendants were just 'occupying' the land, they were actively engaged in construction that created an extremely dangerous condition." Plaintiff's Memorandum (doc. # 31 in C–87–354–L) at 24. While this may suggest that the defendants should not be able to rely on the Recreational Use statutes, it does not dispute that the defendants occupied the premises.

■ To be covered by RSA 212:34, the defendants must not have permitted the recreational use in exchange for "a consideration other than the consideration, if any, paid to [the defendant] by the state . . . ." RSA 212:34 III(b). The moving defendants argue that "consideration" refers to a fee paid by the users of the river. The plaintiffs do not dispute that the users paid no fee. However, they argue that the consideration received by the defendants for their work on the Project qualifies as consideration under RSA 212:34 III(b).

Courts that have considered the "consideration" issue in interpreting similar statutes have held that the consideration need not come from the ultimate user but it must be paid by someone so as to create access to the premises. *See, e.g., Hallacker v. National Bank & Trust Co.,* 806 F.2d 488 (3rd Cir.1986) (plaintiff was the guest of a guest of a lessee of a cottage; the lessee's payment was consideration to use the lake where the plaintiff died); *Ducey,* 713 F.2d at 510–12 & nn. 8–9 (discussing consideration exception to Recreational Use statute in terms of fees paid for entry on or use of premises). Here, the only possible consideration paid to the moving defendants would be increased contract prices so that they would provide for recreational use. However, the plaintiffs have not presented any evidence that the moving defendants received or sought any such fee for permitting recreational use. Therefore, the consideration exception to RSA 212:34 does not apply.

■ Even if the moving defendants are covered by the language of RSA 212:34, the plaintiffs argue that other laws and regulations preclude application of the Recreational Use statute. However, these laws and regulations are not inconsistent with RSA 212:34. The state statutes, orders, and regulations cited by the plaintiffs deal only generally with public safety in connection with construction, operation, and maintenance of the dam. *See* RSA 482:21, NHWRB orders 69.01–H, –H–2; NHWRB Reg. 305.08(g). A general requirement of safety in the operation of the dam is not inconsistent with a limited immunity for permitting recreational use. Furthermore, safety in the operation of the dam extends to more than just recreational users of the river.

■ The FERC orders and regulations cited by the plaintiffs also provide for public safety, specifically mentioning it in the context of public use of project lands and waters. *See, e.g.,* 18 C.F.R. § 4.51(F)(5)(iv) (requiring a license applicant to report on measures proposed "for the purpose of ensuring the safety of the public in its use of project lands and waters . . . ."); 18 C.F.R. § 12.42 (requiring a licensee to "install, operate, and maintain any signs, lights, sirens, barriers, or other safety devices that may reasonably be necessary or desirable to . . . protect the public in the use of project lands and waters.") RSA 212:34 is not inconsistent with these requirements either. Liability is not limited in the case of "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity . . .," RSA 212:34 III(a), or if consideration is paid, RSA 212:34 III(b). To the extent that the moving defendants willfully disregarded dangers to recreational users, they remain liable. Therefore, injured recreational users are not without a remedy.

■ The plaintiffs also argue that because the public had a pre-existing right to use the river, and recreational use statutes are intended to encourage landowners to permit recreational use of otherwise closed property, RSA 212:34 does not apply to these facts. However, the evidence before

the court demonstrates that the moving defendants had some ability to limit access to the river, even if the exact bounds of their discretion is disputed. In the evaluating applications, FERC seeks "the ultimate development of [recreational] resources, consistent with the needs of the area to the extent that such development is not inconsistent with the primary purpose of the project." 18 C.F.R. § 2.7. This implies that FERC does not contemplate unlimited recreational access. *See also* 18 C.F.R. § 4.51(f)(5) (the licensee must report on the availability of recreational facilities for public use); 18 C.F.R. § 8.2 (the licensee must provide information to the public as to which areas are available for public recreation use and any limitations to such use). The license itself also contemplates control by the licensee over recreational use. *See* Order Issuing License, Art. 28 (granting licensee authority to permit uses of project lands and waters and to impose conditions on such use); Terms and Conditions of License, Art. 18 (requiring licensee to allow the public free access, "to a reasonable extent" and "[s]o far as is consistent with proper operation of the project"). On the state level, although the Project area originally was dedicated to use for recreational purposes, *see* Appeal of Lathrop, 122 N.H. 262, 263–64 (1982), the New Hampshire legislature abrogated "any recreational use restriction applicable to the state land being leased" as part of the Project, "to the extent it may be inconsistent, if at all, with the construction and full implementation of the so-called Pontook project." Laws of 1982, ch. 32; *see also Appeal of Committee to Save the Upper Androscoggin*, 124 N.H. 17, 466 A.2d 1308 (1983) (upholding Laws of 1982, ch. 32). These laws and rules indicate that the defendants had some control over recreational use of the river. To the extent that RSA 212:34 would limit liability, it encourages the defendants not to restrict recreational use of the Project site.

In addition, RSA 212:34 I contains no "permission" requirement. It provides that an "occupant of premises owes no duty of care to keep such premises safe for entry or use by others...." Therefore, to the extent that the moving defendants could not grant permission to use the river, they were still covered by the statute.

The river was available for recreational use, the use was unrelated to the moving defendants' business, and the moving defendants received no consideration from the users. Under these circumstances, neither the statute nor any case cited by the plaintiffs indicates that the statute should not apply. Rather, these are the conditions under which the state could desire to limit liability of the moving defendants.

Next, the plaintiffs argue that the moving defendants were bound by duties of care, not contemplated by RSA 212:34, that are specified in the statutes, rules, and regulations previously cited by the plaintiffs. However, the plaintiffs have not brought claims based on the defendants' alleged violations of these requirements and the defendant's motions are directed only at the plaintiffs' negligence claims.

 Finally, the plaintiffs argue that if RSA 212:34 applies, it violates Pt. 1, Art. 14 of the New Hampshire Constitution, which guarantees every person "a certain remedy ... for all injuries he may receive...." The parties agree that, as a restriction on a right to recover in tort, the statute "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation," *Carson v. Maurer*, 120 N.H. 925, 932, 424 A.2d 825 (1980), in order to be constitutional. The restriction of the plaintiffs' right to recover must not "outweigh[] the benefits sought to be conferred upon the general public." *Id.* at 933, 424 A.2d 825. RSA 212:34 limits, but does not eliminate, the liability of owners, lessees, and occupants to recreational users, while encouraging increased use of recreational areas without charge to the users. This limitation is reasonable, in that it encourages increased access to recreational areas, and the object of the legislation—increased public access to recreational areas—is closely related to the limitation of liability. This court cannot conclude that the benefits conferred upon the general public by increased access to

recreational areas is outweighed by the limitation to these users' ability to recover for injuries.

The plaintiffs also contend that RSA 212:34 is unconstitutional in that it eliminates liability in many cases without providing a substitute remedy, citing *Estabrook v. American Hoist & Derrick*, 127 N.H. 162, 170–72, 498 A.2d 741 (1985). However, *Estabrook* is inapplicable to RSA 212:34. *Estabrook* involved the abolition of common law rights under the Workers Compensation Act. Here, no common law rights to sue have been extinguished; they have only been restricted. Therefore, the test described in *Carson* is sufficient, and RSA 212:34 is constitutional.

The plaintiffs' motions for time to present additional evidence (doc. # 32 in C–87–354–L, doc. # 23 in C–87–367–L) are denied, as the plaintiffs have presented no indications as to how additional discovery would affect the resolution of these motions for summary judgment. The motions by defendants Combustion, Sargent, and Yankee for summary judgment (doc. # 22 in C–87–343–L; doc. # 15 in C–87–367–L) are granted with respect to the plaintiffs' claims that are not based on willful or intentional conduct by the moving defendants.