Cheshire
No. 90-376

RICKI FISH

v.

HOMESTEAD WOOLEN MILLS, INC. & *a.*

June 12, 1991

*Attorney Mark Rufo & Associates P.C.*, of Nashua (*Mark Rufo* on the brief and orally), for the plaintiff.

*Sulloway Hollis & Soden*, of Concord (*Edward M. Kaplan* and *Tracy D. Hill* on the brief, and *Mr. Kaplan* orally for both defendants), for defendant Homestead Woolen Mills, Inc.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Theodore Wadleigh* on the brief), for defendant Robert Bennett.

BROCK, C.J. The plaintiff, Ricki Fish, appeals from a Superior Court (*Groff,* J.) order granting the defendants' motions for summary judgment. The plaintiff filed a multi-count negligence suit against the defendants, seeking damages for injuries he suffered when he dove into Swanzey Lake and struck his head on a submerged rock. The defendants, Homestead Woolen Mills, Inc. (Homestead) and Robert Bennett, were the co-owners of the Swanzey Lake dam, and Homestead, individually, owned the property from which the plaintiff dove. According to the plaintiff, the defendants allowed their dam to fall into disrepair, thus lowering the water level in Swanzey Lake, and this, in turn, caused the plaintiff's injuries. For the reasons set out below, we affirm.

The undisputed facts are as follows. On August 4, 1987, the plaintiff suffered a permanent spinal injury when he dove into Swanzey

Lake and hit his head on a submerged rock. The property from which the plaintiff dove was owned by Homestead and was crossed by a path from a public road to the lake. At the time of the incident, the Swanzey Lake dam was leaking, and the lake's water level was lower than normal, although it was still above its natural low-water mark. The defendants, as the owners of the dam, knew of the leaking and of the resulting lowered water levels in the lake. They were also aware of the public's use of Swanzey Lake for recreational purposes, including swimming and diving.

The plaintiff's writ against the defendants contained four counts. Counts one and two alleged, respectively, that the defendants were under a statutory and a common law duty to maintain and repair the Swanzey Lake dam. These duties were allegedly breached when the dam fell into disrepair. As a result, according to the plaintiff, the water level fell, causing the rock that the plaintiff struck to become "dangerously close to the surface of the water." Count three further alleged that, due to the dam's condition, the defendants breached an additional duty by failing to warn the public against the dangers of diving into the lake. Finally, count four was directed solely at Homestead, as landowner, for its failure to warn users of its land of the lowered lake level and the resulting concealed dangers.

The defendants filed motions for summary judgment, arguing that, as a matter of law, they were under no duty to the plaintiff to maintain a certain water level for diving and thus should not be held liable for the plaintiff's injuries. Homestead additionally argued, in its capacity as landowner, that the injury to the plaintiff did not occur on its land but rather on State-owned land, *i.e.*, the rock in Swanzey Lake. Following submission of affidavits and a hearing, the trial court granted the defendants' motions on all counts and, thereafter, denied the plaintiff's motion for reconsideration.

On appeal, the plaintiff does not contest the trial court's finding that no genuine issue of material fact exists but, instead, argues that the court made three errors of law when it ruled in favor of the defendants. First, he contends that the trial court erred when it ruled that evidence of a failure to maintain the dam was legally insufficient to support a finding that the defendants proximately caused his injuries. Second, he asserts error in the court's ruling that the defendants' alleged breach of a statutory duty to maintain their dam, *see* RSA 482:42, *recodified at and hereinafter cited as* RSA 482:59 (Supp. 1990), did not provide a right of recovery for his injuries. Finally, he argues that the trial court was mistaken when it ruled

that RSA 212:34, "Liability of Landowners," barred his suit against Homestead in its capacity as landowner.

█ We turn first to the issue of proximate cause. Specifically, the issue is whether evidence of the defendants' alleged failure to maintain their dam is legally sufficient to support a conclusion that they proximately caused the plaintiff's injuries. To argue, as does the plaintiff, that once the defendants undertook the damming of Swanzey Lake, they then should be held liable to others for the negligent performance of the undertaking, simply ignores the question raised by the issue of proximate cause. Proximate causation requires a court to determine "'whether the defendant *should be* legally liable for what he has caused. . . .'" *McLaughlin v. Sullivan*, 123 N.H. 335, 341–42, 461 A.2d 123, 127 (1983) (quoting W. PROSSER, LAW OF TORTS § 42, at 244 (4th ed. 1971)) (emphasis added).

> "Negligence is a relational concept. . . . The legal quality of an act is determined by considering upon what persons and in what way it might be expected to take effect. . . . [L]iability for negligence is imposed only for injuries resulting from the particular hazard against which the duty of due care required protection to be given."

*Flynn v. Gordon*, 86 N.H. 198, 201–02, 165 A. 715, 717 (1933), *quoted in McLaughlin supra.*

Applying this standard to the facts in the present case, we decline to extend the defendants' duty of due care in maintaining their dam to include protection against injuries which arguably resulted from the lake's lower water level, which was still above the natural low-water mark. Were we to do otherwise, we would be imposing upon dam owners a duty to maintain a specific "safe" water level in their respective lakes. This would not only place an unreasonable burden on dam owners to determine and maintain a level of water that offers minimum risk to all possible users but would also be contrary to the long-established rights of dam owners.

██ In *Whitcher v. State*, 87 N.H. 405, 181 A. 549 (1935), we held that, as against the rights of the public and of littoral owners to enjoy the use of lakefront property, dam owners have the right "to use as much water, at least down to the natural low-water mark, as is necessary for use at [their] privilege, provided [they] make[ ] no intentional misuse and cause[ ] no unnecessary annoyance and damage. . . ." *Id.* at 415, 181 A. at 556. Although this holding did not pertain to a claim of liability for personal injury, the defendants in

the present case, under *Whitcher*, could have intentionally and properly lowered Swanzey Lake's water level to any level above the natural low-water mark. Thus, despite their alleged failure to prevent their dam from leaking, the defendants had no duty to maintain a water level above the natural low-water mark. Absent such a duty, we hold that the defendants should not be held legally accountable for the plaintiff's injuries which were allegedly caused by the lower water level in Swanzey Lake.

The plaintiff also argues that the defendants' alleged violation of RSA 482:59 (Supp. 1990) provides him with a basis of recovery for his injuries. This statute states that "[t]he owner of a dam shall so maintain and repair it that it shall not become a dam in disrepair." *Id.* The legislature has defined a "dam in disrepair" as

> "a dam which is a menace to public safety, or incapable of safely impounding flood waters to its crest, or incapable of maintaining a reasonably constant level of waters impounded, or one which does not contain adequate gates and sluiceways to provide for the holding or controlled discharge of waters impounded."

RSA 482:2, V (Supp. 1990).

In *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 289 A.2d 68 (1972), we held that the then-existing "Dam in Disrepair" statute did set out a standard of conduct which, if violated, could serve as a basis of recovery for property owners whose lands had been flooded. *Id.* at 52, 289 A.2d at 70–71. Specifically, we held that the plaintiffs' lands were "within the orbit of the risk of danger which could result from a violation of the statute." *Id.* at 52, 289 A.2d at 70. The question, then, is whether the present plaintiff's use of Swanzey Lake for diving and his resulting injuries fall within the "risk of danger" addressed by the statute. Expressed another way: were the risks experienced by the plaintiff those which the statute intended to prevent? PROSSER AND KEETON ON THE LAW OF TORTS § 36, at 225 (5th ed. 1984). As we have previously held,

> "[i]t is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him."

*Flynn*, 86 N.H. at 200, 165 A. at 716.

This analysis is similar to that applied in our earlier examination of the question of proximate causation. The "hazard" to which the plaintiff was arguably exposed was a lower water level in Swanzey Lake. Was it the legislature's intention to protect the plaintiff from the risk of injury that he was exposed to as a result of the lake's lower water level? We hold that it was not.

■■ As previously noted, in *Whitcher* we held that dam owners have a right to lower a lake's water level down to the natural low-water mark. *Whitcher*, 87 N.H. at 415, 181 A. at 556. This common law right has never been abrogated by the legislature. *See generally* RSA chapter 482 (Supp. 1990). Interpretation of RSA 482:59 (Supp. 1990) as an expression of legislative intent to impose liability upon dam owners for the particular risk of personal injury presented in this case would conflict with the common law rights outlined in *Whitcher*. Absent a clear expression by the legislature of its intent to alter or abolish a well-established common law right, we will not interpret statutory language to preclude the exercise of that right. *See Hamel Real Estate, Inc. v. Shepherd*, 121 N.H. 733, 736, 433 A.2d 1320, 1322 (1981).

The final issue raised by the plaintiff is whether RSA 212:34, I, bars his action against Homestead based on its failure to warn users of its property of the lowered water level in Swanzey Lake. RSA 212:34, I, provides as follows:

> "An owner . . . of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, trapping, camping, water sports, . . . hiking, sightseeing, or removal of firewood, or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes. . . ."

■ We hold that the statute's language is clear and directly applicable as a bar to the plaintiff's action for landowner liability brought against Homestead.

■ Accordingly, the granting of summary judgment in favor of the defendants is affirmed.

*Affirmed.*

All concurred.