Carroll
No. 2004-726

MAUREEN SORAGHAN

v.

MT. CRANMORE SKI RESORT, INC.

Argued: April 20, 2005
Opinion Issued: June 24, 2005

*Burns, Bryant, Cox, Rockefeller & Durkin, P.A.*, of Dover (*Christine M. Rockefeller* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles, Jr.* and *Shelagh C.N. Michaud* on the brief, and *Mr. Quarles* orally), for the defendant.

DUGGAN, J. The plaintiff, Maureen Soraghan, appeals an order of the Superior Court (*O'Neill*, J.) granting summary judgment to the defendant, Mt. Cranmore Ski Resort, Inc. We reverse and remand.

In January 2000, the plaintiff attended a youth ski meet at Mt. Cranmore Ski Resort in which her daughter was participating. Her daughter's ski club paid $2,071.58 to reserve the property for the special meet and her daughter paid $55 to participate. The plaintiff was both a spectator and a volunteer at the ski race and did not pay a fee to attend. While walking between two buildings on the way to her car to retrieve her ski equipment, she fell in a crevasse and severely injured her knee. The

plaintiff brought suit alleging that the defendants failed to properly maintain the property. The trial court granted the defendant's motion for summary judgment, ruling that the defendant was not liable under the recreational use statute, RSA 508:14 (1997), because "the plaintiff was on the defendant's property on the day of her injury to be a spectator for her daughter's ski race" and "did not pay any consideration for that activity." This appeal followed.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Estate of Joshua T. v. State*, 150 N.H. 405, 407 (2003). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.*

On appeal, the plaintiff argues that RSA 508:14 does not apply to private landowners who are engaged in the business of recreational activities for profit and customarily charge for access to their land. The defendant argues that the statute and case law does not distinguish between commercial and non-commercial properties and, thus, RSA 508:14 does apply. The defendant argues in the alternative that, even if we hold that RSA 508:14 does not apply, it is entitled to summary judgment under RSA 212:34 (Supp. 2004). We address each argument in turn.

The question before us is one of statutory interpretation. We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *In the Matter of Jacobson & Tierney*, 150 N.H. 513, 515 (2004). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* When statutory language is ambiguous, we examine the statute's overall objective and presume that the legislature would not pass an act that would lead to an absurd or illogical result. *Marceau v. Concord Heritage Life Ins. Co.*, 149 N.H. 216, 220 (2003). Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *State v. Whittey*, 149 N.H. 463, 467 (2003). We review the trial court's interpretation of a statute *de novo*. *Remington Invs. v. Howard*, 150 N.H. 653, 654 (2004).

Statutes in derogation of the common law are to be interpreted strictly. *Sweeney v. Ragged Mt. Ski Area*, 151 N.H. 239, 241 (2004). While a statute may abolish a common law right, there is a presumption that the legislature has no such purpose. *Id.* If such a right is to be taken away, it must be expressed clearly by the legislature. *Id.* Accordingly, immunity

provisions barring the common law right to recover are to be strictly construed. *Id.*

RSA 508:14, I, provides in pertinent part:

> An owner, occupant, or lessee of land, including the state or any political subdivision, who without charge permits any person to use land for recreational purposes or as a spectator of recreational activity, shall not be liable for personal injury or property damage in the absence of intentionally caused injury or damage.

We have recently addressed the applicability of RSA 508:14, I, to private landowners who permit the private recreational use of their land. *Estate of Gordon-Couture v. Brown*, 152 N.H. 265 (2005). In *Gordon-Couture*, we recognized that the Committee of State Officials on Suggested State Legislation of the Council of State Governments explained the purpose behind the model act as follows:

> Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreational resources available. Where the owners of private land suitable for recreational use make it available on a business basis, there may be little reason to treat such owners and the facilities they provide in any way different from that customary for operators of private enterprises. However, in those instances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.

*Id.* at 268 (quotation omitted); COMMITTEE OF STATE OFFICIALS ON SUGGESTED STATE LEGISLATION, XXIV SUGGESTED STATE LEGISLATION 150 (1965) (hereinafter SUGGESTED STATE LEGISLATION). In light of this purpose, we narrowly construed RSA 508:14, I, to provide immunity when private landowners permit members of the general public to use their land for recreational purposes. *Estate of Gordon-Couture*, 152 N.H. at 271. In doing so, we joined numerous other States that have interpreted statutes similar to RSA 508:14 to effectuate the purpose of recreational use statutes: to encourage public recreational use of privately-owned land. *Id.* at 270.

■ ■ We construe RSA 508:14, I, to effectuate its purpose. For immunity to apply, the statute requires that private landowners allow any person as a member of the general public to use their land. *See id.* at 271. The statute also requires that the landowner do so "without charge." RSA 508:14, I. Where the landowner customarily charges for access to its recreational facilities, the property is not being held open without charge to any member of the general public for recreational use. *Cf. Conant v. Stroup*, 51 P.3d 1263, 1265 (Or. Ct. App. 2002). Indeed, it would not further the purpose of the statute to limit the liability of a private landowner where an individual is on the premises for a purpose related to the landowner's business for which the landowner customarily charges. *See* SUGGESTED STATE LEGISLATION, *supra* at 150. Thus, the inquiry is not whether any single person was not charged to use the land for recreational purposes. *See Kantner v. Combustion Engineering*, 701 F. Supp. 943, 948 (D.N.H. 1988) (recognizing that "[c]ourts that have considered the 'consideration' issue in interpreting similar statutes have held that the consideration need not come from the ultimate user but it must be paid by someone so as to create access to the premises"); *Smith v. Cutty's Inc.*, 742 P.2d 347, 349 (Colo. Ct. App. 1987). Rather, the inquiry is whether the injured entrant was on the property for a purpose related to the landowner's business for which the landowner customarily charges. *See Smith*, 742 P.2d at 349. Accordingly, the trial court erred in basing its decision upon whether any single person, *i.e.*, the plaintiff, was not charged to use the land for recreational purposes.

The defendant points to several cases where both recreational use statutes, RSA 508:14 and RSA 212:34, have applied to private commercial land to argue that RSA 508:14 applies equally to commercial and non-commercial properties. *See, e.g., Kantner*, 701 F. Supp. at 945; *Fish v. Homestead Woolen Mills*, 134 N.H. 361, 362 (1991). These cases are distinguishable from the present case because the recreational use of the property was not related to the landowners' business and the landowners did not charge for the recreational use of their land. In *Kantner*, two individuals drowned while swimming near the base of a dam that was being reconstructed. *Kantner*, 701 F. Supp. at 945. The defendants were occupants of the land and had contracted to construct and operate the Pontook dam. *Id.* The court held that the defendants were entitled to immunity under the recreational use statutes because "[t]he river was available for recreational use, *the use was unrelated to the [ ] defendants' business*, and the [ ] defendants received no consideration from the users." *Id.* at 949 (emphasis added). Likewise, in *Fish*, the plaintiff was injured when he dove into Swanzey Lake. *Fish*, 134 N.H. at 362. The defendants were co-owners of the Swanzey Lake dam, and one defendant individually

owned the property from which the plaintiff dove. *Id.* Again, immunity under the recreational use statutes was appropriate because the plaintiff's use was unrelated to the defendants' business and the landowner permitted the general public to swim in the lake without charge. *Id.* at 366.

The defendant also points to *Hardy v. Loon Mountain Recreation Corp.*, 276 F.3d 18 (1st Cir. 2002), to argue that RSA 508:14 should apply. In *Hardy*, the plaintiff was injured while walking on a path at the top of Loon Mountain. *Hardy*, 276 F.3d at 19. The First Circuit held that, even though the plaintiff paid five dollars to ride the gondola to the top of the mountain, the recreational use statutes applied because Loon Mountain did not charge for access to the property or to participate in the activities at the top of the mountain. *Id.* at 19-21 (noting that the plaintiff "could have hiked to the mountain's summit for free").

*Hardy* is also distinguishable. The First Circuit recognized that the recreational use statutes do not apply "if the landowner charges the public for access to the land." *Id.* at 20. The court reasoned that, "Both the statutes and their exceptions are logical because they encourage free and open use of recreational space. When landowners directly profit from such access, however, it is only fair that they be subject to liability for their negligent actions." *Id.* Although Loon Mountain's "mainstay during the winter months is its operation of a ski area," Loon Mountain's summer recreational activities are held open to the general public without charge. *Id.* at 19. Indeed, Loon Mountain is located on United States Forest Service land and, under the provisions of the special use permit that gives the company the nonexclusive right to offer recreational activities, Loon Mountain was required to allow visitors to hike and sightsee in the area without paying a fee. *Id.* Accordingly, the summer recreational activities offered at Loon Mountain are not related to its business of operating a ski area and are open to the general public without charge.

Finally, the defendant argues that, even if RSA 508:14 does not apply, RSA 212:34 provides an alternative basis for granting summary judgment. We disagree.

RSA 212:34 provides:

> I. An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, trapping, camping, horseback riding, water sports, winter sports or OHRVs ... , hiking, sightseeing, or removal of fuelwood, or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in paragraph III hereof.

II. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, ride horseback, hike, use OHRVs . . . , sightsee upon, or remove fuelwood from, such premises, or use said premises for water sports, or winter sports does not thereby:

(a) Extend any assurance that the premises are safe for such purpose, or

(b) Constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed, or

(c) Assume responsibility for or incur liability for an injury to person or property caused by any act of such person to whom permission has been granted except as provided in paragraph III hereof.

III. This section does not limit the liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or

(b) For injury suffered in any case where permission to hunt, fish, trap, camp, ride horseback, hike, use for water sports, winter sports or use of OHRVs . . . , sightsee, or remove fuelwood was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or

(c) The injury caused by acts of persons to whom permission to hunt, fish, trap, camp, ride horseback, hike, use for water sports, winter sports or use of OHRVs . . . , sightsee, or remove fuelwood was granted, to third persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger.

We note that we do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme. *Nilsson v. Bierman*, 150 N.H. 393, 395 (2003). When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes. *Id.*

■ Both RSA 212:34 and RSA 508:14, I, limit the liability of landowners toward entrants on land in circumstances that involve recreational activities for which the landowner did not charge. Because RSA 212:34 deals with a similar subject matter as RSA 508:14, I, the statutes should be construed so that they do not contradict each other. *Id.* Therefore, RSA 212:34 likewise should be construed to grant immunity for entrants who use the land for certain recreational activities that are not related to the landowner's business and are open to the general public without charge.

■ This conclusion is supported by the purpose of the statute. As noted above, the purpose of recreational use statutes is to encourage private landowners to make their land available without charge for public recreational uses by limiting their liability. SUGGESTED STATE LEGISLATION, *supra* at 150. In addition, when the legislature originally enacted RSA 212:34, it included a preamble that stated that the purpose of the statute was to clarify the "duty of care owed by landowners towards others who may be on their premises for sporting or recreational purposes and *not for purposes connected with landowner's own business.*" Laws 1961, ch. 201 (1961) (emphasis added). Thus, RSA 212:34 does not extend immunity when the injured entrant was on the property for a purpose related to the landowner's business for which the landowner customarily charges.

■ We note that RSA chapter 225-A (2000 & Supp. 2004) is a comprehensive statute governing skiers and the operation of ski areas. Under this chapter, the legislature extended immunity to ski operators "for any injuries which result from [the] inherent risks, dangers, or hazards" of the sport of skiing. RSA 225-A:24, I (2000). The legislature also extended immunity to ski operators "for failure to instruct persons on the use" of ski lifts. RSA 225-A:24, II. The legislature clearly defined the extent of immunity granted to ski operators in RSA chapter 225-A. Interpreting RSA 212:34 and RSA 508:14 in the context of the overall statutory scheme and not in isolation, *Nilsson*, 150 N.H. at 395, leads us to the conclusion that the more specific ski operator statute, RSA ch. 225-A, governs the immunity of ski operators for activities related to their business, and not the general recreational use statutes. *Cf. Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 283 (1988) (noting that specific, more recently-enacted statute controls over general, earlier-enacted statute), *appeal denied sub nom. Public Service Co. of New Hampshire v. New Hampshire*, 488 U.S. 1035 (1989).

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.