Colebrook District Court
No. 2005-151

### THE STATE OF NEW HAMPSHIRE

v.

### JOSEPH J. MORABITO

Argued: February 9, 2006
Opinion Issued: March 10, 2006

*Kelly A. Ayotte,* attorney general (*Constance N. Stratton,* senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Joseph J. Morabito, appeals his conviction on four counts of criminal threatening following a bench trial in Colebrook District Court (*Desjardins*, J.). We reverse and remand.

The record supports the following facts. On August 9, 2004, Officer Guthrie Peet of the Colebrook Police Department was dispatched to investigate a report of a car honking its horn and flashing its lights. Upon arriving at the scene, he found two people inside the car and the defendant standing outside of it. Peet arrested the passenger of the car, as the conditions of her bail prohibited her from having contact with the defendant, and placed her in the back of his cruiser. Having smelled the odor of alcohol in the car, Peet then turned his attention to the driver and attempted to perform field sobriety tests to determine whether he was intoxicated. At the same time, the defendant was circling the cruiser and provoking the arrested woman. Peet called for assistance to control the scene so he could perform the field sobriety tests on the driver.

Officer David Radun arrived at the scene and took the defendant aside so Peet could continue with the field sobriety tests. The defendant told Radun that he "was sick of dealing with cops" and that he was close to shooting all of the officers in the Colebrook Police Department. Radun told the defendant that he did not want to be threatened or hear threats against others, but the defendant continued, stating that he would kill the Chief of Police if he were sent to jail on a pending charge.

The driver failed the field sobriety tests and was taken into custody by Peet, who then left the scene to bring the arrestees to the police station. Radun remained at the scene with the defendant, who continued to make statements that worried the officer. The defendant said that the anniversary of his son's death was approaching, and that he "would die more than likely in a shoot-out with the cops"; he also made reference to beating the Chief's head "into the ground." Radun again told the defendant that he did not want to hear comments to that effect, and that he would have to do something about them.

The defendant then looked at Radun's gun and told him that he was thinking about taking it, and that whoever was "faster" would have to kill the other person. Radun believed the defendant to be very serious about the threats that he was making and again warned him that he would have to take action as a result of them. One of the defendant's sons then emerged from a nearby house and persuaded the defendant to leave the scene, and Radun returned to the station. Shortly thereafter, the

defendant appeared at the station and asked to speak to an officer. He was subsequently placed under arrest for criminal threatening.

On October 28, 2004, the defendant was found guilty on four charges of criminal threatening. Two of the complaints upon which he was convicted, docket numbers 04-CR-0780 and 04-CR-0782, charged that he "did knowingly place another in fear of imminent bodily injury with the purpose to terrorize . . . ." The other two, docket numbers 04-CR-0840 and 04-CR-0841, charged that the defendant "did knowingly threaten to commit a crime, to wit, murder, against the person of another, to wit, Chief Cass of the Colebrook Police Department . . . with a purpose to terrorize . . . Officer Radun." During the trial, the defendant moved to dismiss these charges, but the trial court denied his motion.

At the close of evidence, the defendant argued that the complaints, which alleged a *mens rea* of "knowingly," were defective because the crime of criminal threatening actually required a *purposeful* mental intent. The trial court nonetheless found him guilty, concluding that the requisite intent was, in fact, "knowingly," and that the State had met its burden of demonstrating a "purpose to terrorize." The defendant then submitted a motion for reconsideration, arguing that the complaints impermissibly lowered the *mens rea* element of criminal threatening. The trial court denied the motion.

On appeal, the defendant contends that the complaints alleged an incorrect *mens rea*, and that the trial court, therefore, erred in finding him guilty of the charged offenses.

We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Soraghan v. Mt. Cranmore Ski Resort, Inc.*, 152 N.H. 399, 401 (2005). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* We review a trial court's interpretation of a statute *de novo. Id.*

The defendant was charged with four counts of criminal threatening pursuant to RSA 631:4 (Supp. 2005), which states, in relevant part:

I. A person is guilty of criminal threatening when:

(a) By physical conduct, the person purposely places or attempts to place another in fear of imminent bodily injury or physical contact; or

. . . .

(d) The person threatens to commit any crime against the person of another with a purpose to terrorize any person . . . .

The complaints in docket numbers 04-CR-0840 and 04-CR-0841 plainly charge the defendant with the crime of criminal threatening under RSA 631:4, I(d). RSA 631:4, I(d) is comprised of three material elements: (1) a defendant must threaten to commit a crime (2) against the person of another (3) with a purpose to terrorize any person. The complaints track this language, but add a *mens rea* of "knowingly" to the first element, even though RSA 631:4, I(d) prescribes no lesser mental intent, nor could it. *See* RSA 626:2, I (1996) ("A person is guilty of . . . a felony, or a misdemeanor only if he acts purposely, knowingly, recklessly *or* negligently, as the law may require.") (Emphasis added.).

"When the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears." RSA 626:2, I. RSA 631:4, I(d) identifies a purposeful *mens rea* as being sufficient for the commission of the crime of criminal threatening. In accordance with RSA 626:2, I, the same *mens rea* applies to all material elements of RSA 631:4, I(d). *Cf. State v. McKean*, 147 N.H. 198, 200 (2001) (*mens rea* for criminal threatening is that the defendant acted "purposely"); *State v. McCabe*, 145 N.H. 686, 692 (2001) (purposeful *mens rea* required for material elements of criminal threatening). Thus, it was error for the trial court to conclude that the requisite *mens rea* for the crime of criminal threatening under RSA 631:4, I(d) was "knowingly."

The State concedes that the trial court erred in this respect, but contends that the inclusion of the additional *mens rea* of "knowingly" was surplusage and had no effect on its burden under RSA 631:4. Referencing *State v. Pond*, 132 N.H. 472 (1989), the State asserts that the word "knowingly" may be disregarded, and that the complaints will remain sufficient through retention of the words "purpose to terrorize." It is true that, in *Pond*, we determined that the word "knowingly" could be disregarded in a set of indictments as surplusage, where said indictments also contained the correct *mens rea* of "purposely." *Id.* at 476. Our holding, however, was pertinent only to the question of whether or not the defendant was prejudiced by the trial court's decision to "amend" the defective indictments by omitting the term "knowingly" in its instructions to the jury. *Id.*

To constitute reversible error, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Rodriguez v. Webb*, 141 N.H. 177, 179 (1996). In the present case, the trial court did not correct an error in the underlying complaints to eliminate an improper *mens rea*. Instead, it improperly adopted the additional *mens rea* term, stating, "the requisite intent in dealing with

these complaints is, in fact, knowingly." "Knowingly" is a lesser mental state than "purposely." *See McKean,* 147 N.H. at 200. It was under this lessened standard that the defendant was found guilty of criminal threatening, and, as such, the defendant was unfairly prejudiced by the trial court's decision. We conclude, therefore, that the trial court committed reversible error by interpreting RSA 631:4 to include a *mens rea* of "knowingly."

■ The complaints in docket numbers 04-CR-0780 and 04-CR-0782 charge that the defendant "did knowingly place another in fear of imminent bodily injury with the purpose to terrorize," and thereby combine elements of RSA 631:4, I(a) and RSA 631:4, I(d). RSA 631:4, I(a), like RSA 631:4, I(d), plainly prescribes a purposeful *mens rea* for the crime of criminal threatening. We need not determine whether these complaints sufficiently charge the defendant with a crime under RSA 631:4, I(a) or RSA 631:4, I(d), as our analysis in either case will inevitably lead us to the same conclusion that we reach above. Therefore, as to docket numbers 04-CR-0780 and 04-CR-0782, we conclude that the trial court committed reversible error by interpreting RSA 631:4 to include a *mens rea* of "knowingly."

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.