Cheshire County Probate Court
No. 2011-171

IN RE GUARDIANSHIP OF MARY LOUISE EATON

Submitted: November 16, 2011
Opinion Issued: March 16, 2012

*Laboe Associates, PLLC*, of Concord (*Kerri S. Glover* on the brief), for the petitioner.

*Bradley & Faulkner, P.C.*, of Keene (*Gary J. Kinyon* on the brief), for the respondent.

*Tropiano Law Office*, of Derry (*Lisa J. Bellanti* on the memorandum of law), for the New Hampshire Chapter of the National Academy of Elder Law Attorneys, as *amicus curiae*.

CONBOY, J. The petitioner, Daniel Eaton, appeals the denial of his motion for payment of legal fees, arguing that the Cheshire County Probate Court (*Hampe*, J.) erred in finding that the imposition of a guardianship does not require the proposed ward to pay a good-faith petitioner's attorney's fees pursuant to RSA 464-A:43 (2004). We affirm.

The pertinent facts are drawn from the record. In March 2010, Dean Eaton (Dean), the petitioner's brother, filed a petition for guardianship over their mother, Mary Louise Eaton. The petitioner objected to Dean's petition and filed his own petition. In June 2010, in a written settlement agreement, the petitioner and Dean agreed that their brother, Michael Eaton, the respondent, would be appointed guardian. Shortly thereafter, the trial court found Mrs. Eaton incapacitated and appointed the respondent guardian over her person and estate.

Thereafter, the petitioner asked the court, pursuant to RSA 464-A:43, to order the respondent, as guardian of Mrs. Eaton's estate, to pay the attorney's fees he incurred during the proceedings. The respondent objected.

The trial court denied the petitioner's motion, reasoning that under RSA 464-A:43, I, the statute providing for payment of guardianship costs, "the phrase 'fees for the counsel' refers to the counsel for the proposed ward," and not to the counsel for the petitioner. The court further found that no other justification existed to require payment of the petitioner's attorney's fees from the ward's estate. This appeal followed.

■ "An award of attorney's fees must be grounded upon statutory authorization, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." *Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H.

9, 14 (1995) (quotation and ellipsis omitted). Here, the petitioner asserts entitlement to an award of attorney's fees pursuant to RSA 464-A:43.

We review the trial court's statutory interpretation *de novo*. *State v. Bernard*, 158 N.H. 43, 44 (2008). In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Id*. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id*. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id*. Further, we interpret a statute in the context of the overall scheme and not in isolation. *Id*. We do not consider legislative history to construe a statute that is clear on its face. *Id*.

RSA 464-A:43 provides in full:

The costs incurred by the imposition of a guardianship or conservatorship pursuant to the procedures established in this chapter shall be distributed in the following manner:

I. Except in cases in which the petitioner filed the petition in bad faith, the court costs and *fees for the counsel* and resource person shall be borne by the proposed ward. In cases in which the petitioner acted in bad faith, he or she shall bear all costs of the proceeding.

II. If the proposed ward is indigent, the costs and fees of the proceeding shall be borne by the state.

III. The costs incurred in the petition for a conservatorship shall be paid by the estate of the conservatee.

RSA 464-A:43 (emphasis added).

The petitioner argues that RSA 464-A:43, I, mandates the payment of his fees from the ward's estate in the absence of bad faith on his part. The petitioner grounds his argument in: (1) a plain reading of the statute; (2) the legislative history of the statute; and (3) public policy. We address his arguments in turn.

First, the petitioner argues that entitlement to his attorney's fees necessarily flows from the plain meaning of the phrase, "fees for the counsel." The petitioner notes that the statute does not define or qualify the word "costs" in the opening sentence, or the word "counsel" in paragraph I, or otherwise specify that a petitioner's attorney's fees are not included. Further, the petitioner argues that because proposed wards do not incur court costs in guardianship proceedings, the phrase "court costs," used in

paragraph I, cannot refer to a ward's court costs. He contends, therefore, that the phrase "court costs and fees for the counsel" necessarily refers to a petitioner's court costs and attorney's fees. The petitioner acknowledges that in other sections of the guardianship chapter, there are numerous references to the proposed ward's counsel. *See, e.g.*, RSA 464-A:4-:6 (2004), :8 (2004), :11 (2004), :12 (Supp. 2011), :13 (2004), :25 (Supp. 2011), :43. He argues, however, that those specific references to the proposed ward's counsel support his position that the unqualified word "counsel," in subsection 43, I, does not exclude the petitioner's counsel.

In contrast, the respondent contends that the phrase "fees for the counsel" does not include a petitioner's attorney's fees. He argues that the purpose of the chapter is to protect the rights of proposed wards. He notes that the chapter requires the court to appoint counsel for a proposed ward who does not have counsel, *see* RSA 464-A:6, I, but has no similar provision relating to a petitioner. He points out that the chapter refers to a proposed ward's counsel numerous times but never to a petitioner's counsel. Finally, he argues that a "resource person" acts on behalf of the proposed ward, not a petitioner. Therefore, he argues, the phrase "fees for the counsel and resource person" can only mean a proposed ward's counsel and the resource person.

■ We agree with the trial court's reasoning and hold that the statute's stated purpose and the statutory scheme indicate that the legislature intended the phrase "fees for the counsel" to refer to a proposed ward's counsel, not a petitioner's counsel.

■ The stated purpose of RSA chapter 464-A is to "promote and protect the well-being of the proposed ward." RSA 464-A:1 (2004). In particular, the "chapter is designed to provide procedural and substantive safeguards for civil liberties and property rights of a proposed ward." *Id.* These safeguards are needed considering the potentially adversarial nature of guardianship proceedings, *see, e.g., In re DeLucca*, 121 N.H. 71, 72 (1981), and the significance of the liberties and rights at stake, *see, e.g., In re Gamble*, 118 N.H. 771, 775 (1978) ("A person who is legally declared incompetent is substantially deprived of liberty. An incompetent person is reduced to the status of a child . . . .").

■ Prominent among the statutory safeguards are the proposed ward's right to counsel and the potential appointment of a guardian ad litem. RSA 464-A:6, I, provides in part:

> The right to legal counsel for any person for whom a temporary guardian or guardianship of the person and estate, or person, or estate, is sought shall be absolute and unconditional. If the

proposed ward does not have his or her own counsel, the court shall appoint counsel for the proposed ward immediately upon the filing of a petition for guardianship . . . .

"The guarantee of counsel now makes the proposed ward an active party in the very proceedings determining his *need* for a guardian, and *who* should be his guardian." *In re Snow Estate,* 120 N.H. 590, 592 (1980) (quotation omitted). The role of counsel in guardianship proceedings is to, "as far as reasonably possible, carry out the client's decisions," "[e]ven when representing a client with a disability." *In re Guardianship of Henderson,* 150 N.H. 349, 350 (2003). The statute further protects a proposed ward by permitting courts "to appoint a guardian ad litem when it appears that the rights of the allegedly incapacitated person are not fully represented." *Id.*; *see* RSA 464-A:41, I (Supp. 2011). The guardian ad litem is charged with reaching "an independent conclusion on what is in the best interest of the proposed ward." *Henderson,* 150 N.H. at 350 (quotation and brackets omitted).

■ Representation by counsel and the potential for the appointment of a guardian ad litem assure protection of the proposed ward's desires and best interests and obviate the need for a petitioner to employ counsel on behalf of the proposed ward. Further, RSA 464-A:6, II protects proposed wards by mandating that a proposed ward's appointed counsel be compensated at a rate determined by this court. *See* RSA 464-A:6. That provision makes no reference to counsel fees incurred by a petitioner. *See id.* If a petitioner chooses to employ counsel, that counsel represents the *petitioner's* interests, which may be adverse to the proposed ward or another petitioner. To read the statute as requiring a proposed ward to pay a petitioner's discretionary attorney's fees, even if the petitioner's interests are adverse to the proposed ward's interests, would thus run counter to these legislative safeguards.

■ While a petitioner is free to choose to employ counsel, nothing in the statute requires a petitioner to retain counsel to petition for guardianship. Moreover, guardianship procedures contemplate that petitions may be filed without the assistance of counsel. RSA 464-A:4 outlines the procedure by which "[a]ny relative, public official, or interested person, or any individual in his or her own behalf" may file a petition for appointment of a guardian. RSA 464-A:4. Although the petitioner bears the burden of establishing the incapacity of the proposed ward, *see* RSA 464-A:8, IV, "[t]he statute is not designed to erect procedural hurdles which only the most persevering and painstaking proposed guardians can overcome." *DeLucca,* 121 N.H. at 73.

■ The petitioner asserts that to read the statute as limiting "fees for the counsel" to the proposed ward's counsel renders the last sentence in RSA 464-A:43, I, meaningless. That sentence provides, "In cases in which the petitioner acted in bad faith, he or she shall bear all costs of the proceeding." RSA 464-A:43, I. The petitioner argues that the statute should be read to preclude an award of attorney's fees to a petitioner only when the petitioner has acted in bad faith. He asserts that to construe the statute otherwise denies a petitioner his attorney's fees even when the petitioner acts in good faith. Our holding today, that the statute does not contemplate a ward's responsibility for payment of a petitioner's counsel fees, regardless of the petitioner's good or bad faith, is dispositive. We note, however, that the respondent's reading of the statute — that absent bad faith by a petitioner, the proposed ward is liable for her own attorney's fees, but when the petitioner acts in bad faith, the petitioner is liable for the proposed ward's attorney's fees — gives meaning to the last sentence of RSA 464-A:43, I, and is not inconsistent with our holding. Nonetheless, because there has been no assertion here that the petitioner filed the petition in bad faith, we need not decide whether bad faith by a petitioner would result in liability for the proposed ward's attorney's fees, as part of "all costs of the proceeding."

■ Neither are we persuaded by the petitioner's two additional statutory arguments. The petitioner argues that RSA 464-A:26, I (Supp. 2011), which provides that "[t]he guardian of the estate shall apply the money and property for the support, care, and education of the ward," requires that a ward's estate pay a petitioner's attorney's fees because the fees are a necessary cost associated with a benefit to the proposed ward. The petitioner points out that he hired legal counsel "after repeated pleas from the (then) proposed ward that he seek to maintain her existing arrangements," and that the efforts of the legal counsel he hired "were solely for the benefit of [the ward]." We decline to infer, however, that "the support, care, and education of the ward" encompasses legal fees incurred by an unsuccessful petitioner for guardianship, particularly where the legislature has explicitly provided for appointment of counsel for the proposed ward.

■ In his final statutory argument, the petitioner asserts that because guardianships and conservatorships are similar, and because, pursuant to RSA 464-A:43, III, a conservatee's estate bears the costs incurred by the imposition of a conservatorship, RSA 464-A:43, I, must mean that a proposed ward is liable for a guardianship petitioner's attorney's fees. We are not persuaded by the petitioner's analogy. Although there are some similarities between guardianships and conservatorships, the differences between the proceedings are too significant to sustain the petitioner's

argument. A conservatorship proceeding is voluntarily initiated by the conservatee, *see* RSA 464-A:13, and does not involve adversarial process or counsel other than counsel appointed for the conservatee. *See* RSA 464-A:13-:14 (2004). In contrast, a guardianship proceeding is a potentially adversarial proceeding in which the petitioner's counsel may argue, despite the proposed ward's objection, that a proposed ward's incapacity justifies the deprivation of significant rights and liberties. *See, e.g., DeLucca,* 121 N.H. at 72; *Gamble,* 118 N.H. at 775.

■ The petitioner also argues that the legislative history of RSA 464-A:43 supports his contention that the legislature intended proposed wards to be liable for petitioners' attorney's fees. "When a statute is ambiguous we consider legislative history to aid our analysis." *AIMCO Props. v. Dziewisz,* 152 N.H. 587, 590 (2005). The phrase "fees for the counsel," standing alone, is ambiguous; however, the legislative history of the statute provides no guidance as to the intended meaning of the phrase. Nevertheless, as explained above, the stated purpose of the statute and the entire statutory scheme support our holding that the legislature intended the phrase "fees for the counsel" to refer to a proposed ward's counsel, not a petitioner's counsel. *See Bernard,* 158 N.H. at 44.

■ As to the petitioner's public policy argument, he is joined by the New Hampshire Chapter of the National Academy of Elder Law Attorneys, acting as *amicus curiae.* They argue that the court's interpretation creates financial disincentives for petitioners to file guardianship petitions because they will be liable for their own attorney's fees. While we are not unsympathetic to this concern, "[w]e reserve such matters of public policy for the legislature." *Eng Khabbaz v. Comm'r, Social Sec. Admin.,* 155 N.H. 798, 805 (2007).

*Affirmed.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.