8th Circuit Court — Keene Probate Division
No. 2012-703

DANIEL A. EATON

v.

MARY LOUISE EATON *& a.*

Argued: October 10, 2013
Opinion Issued: December 20, 2013

*Laboe Associates, PLLC*, of Concord (*Kerri S. Tasker* and *John E. Laboe* on the brief, and *Mr. Laboe* orally), for the petitioner.

*Bradley & Faulkner, P.C.*, of Keene (*Gary J. Kinyon* on the brief and orally), for the respondents.

LYNN, J. The petitioner, Daniel A. Eaton, appeals an order of the 8th Circuit Court — Keene Probate Division (*Hampe*, J.), which granted the summary judgment motion filed by the petitioner's mother, Mary Louise Eaton (Mrs. Eaton), and her guardian, Michael Eaton (Michael). We affirm.

This is the second appeal arising from the petitioner's attempts to be paid for legal fees he incurred in guardianship proceedings involving his mother. *See In re Guardianship of Eaton*, 163 N.H. 386 (2012). The following facts are drawn from *Eaton* and from the record in this appeal.

In March 2010, Dean Eaton (Dean), the petitioner's brother, filed a petition for guardianship over their mother, Mrs. Eaton. *Id.* at 388. The petitioner objected to Dean's petition and filed his own petition. *Id.* In a June 2010 settlement agreement, the petitioner and Dean agreed that their brother, Michael, would be appointed guardian. *Id.* Shortly thereafter, the trial court found Mrs. Eaton to be incapacitated and appointed Michael guardian over her person and estate. *Id.* Thereafter, the petitioner filed a motion under RSA 464-A:43 (2004), requesting the trial court to order Michael, as guardian of Mrs. Eaton's estate, to pay the attorney's fees the petitioner incurred during the guardianship proceedings. *Id.* Michael objected, and the trial court denied the petitioner's motion. *Id.* We upheld the trial court's decision in *Eaton*. *Id.* at 393.

In October 2010, the petitioner filed the instant action, in which he again sought payment of legal fees incurred during the guardianship proceeding. He alleged that he was entitled to the fees because he acted as his mother's attorney-in-fact pursuant to a durable general power of attorney, which was executed in October 2004. The respondents moved for summary judgment on three grounds: (1) that the actions taken by the petitioner were not done pursuant to the power of attorney but for the petitioner's own benefit; (2) that the petitioner had no authority to act under the power of attorney because it lacked the acknowledgment required by RSA 506:6, VII(a) (2010); and (3) that the petitioner admitted under oath in a deposition that the only time he acted under the power of attorney was in connection with obtaining medical records. The trial court found that there were genuine issues of material fact in dispute with regard to the respondents' first and third arguments which precluded the trial court from granting summary judgment. However, with respect to the second argument, the trial court ruled that "the acknowledgment requirement of RSA 506:6, VII(a) is mandatory and therefore Daniel Eaton could not have been acting as Mary Lou Eaton's attorney-in-fact when he undertook the acts [for which the legal fees were claimed], as a matter of law." The trial court therefore granted summary judgment for the respondents on that ground.

On appeal, the sole issue is whether the trial court erred in ruling that the absence of an acknowledgment executed by the petitioner and affixed to the durable general power of attorney precluded the petitioner from acting under the power. This presents an issue of statutory interpretation, which is a question of law that we review *de novo. Schiavi v. City of Rochester*, 152 N.H. 487, 489 (2005). "We are the final arbiter of the legislature's intent as

expressed in the words of the statute considered as a whole." *Eaton*, 163 N.H. at 389. "Further, we interpret a statute in the context of the overall statutory scheme and not in isolation." *Id.* "When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." *Id.* "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* "We do not consider legislative history to construe a statute that is clear on its face." *Id.*

In this case there are two pertinent requirements for a durable general power of attorney: it must have affixed to it both a properly executed "disclosure statement" by the principal, *see* RSA 506:6, VI(a), and a properly executed "acknowledgment" by the attorney-in-fact, *see* RSA 506:6, VII(a). RSA 506:6, VII(a) specifically states that an attorney-in-fact "shall have no authority to act" under the power of attorney unless the attorney-in-fact first has executed and affixed to it the required acknowledgment.

The disclosure statement serves multiple purposes under the statute. First, it ensures that the principal made an informed decision to appoint an attorney-in-fact. RSA 506:6, VI(a). Second, it informs the principal, among other things, that the durable general power of attorney grants the attorney-in-fact the power to make decisions concerning the principal's "money, property, or both" on the principal's behalf. *Id.* Third, it also informs the principal that the principal has the power to revoke the power of attorney as long as she is "of sound mind." *Id.*

The acknowledgment explains the duties and responsibilities of, and burdens on, the attorney-in-fact as the principal's agent. RSA 506:6, VII(a). It informs the agent that the durable general power of attorney "is valid only if the Principal is of sound mind when the Principal signs it." *Id.* It ensures that the attorney-in-fact is aware that he owes the principal a fiduciary duty. *Id.* Under this fiduciary duty, the attorney-in-fact must "observe the standards observed by a prudent person, which means the use of those powers that is reasonable in view of the interests of the Principal and in view of the way in which a person of ordinary judgment would act in carrying out that person's own affairs." *Id.* The acknowledgment further informs the attorney-in-fact not to "use the money or property for [his] own benefit or to make gifts to [him]self or others unless the Durable Power of Attorney specifically gives [him] the authority to do so." *Id.* It also informs the attorney-in-fact that if his acts are challenged, he has the burden of proving that he "acted under the standards of a fiduciary." *Id.*

While the petitioner and the respondents purport to agree that the durable general power of attorney here was "valid," their divergent views

on the meaning of validity renders their agreement illusory. The respondents contend that the power of attorney was valid only in the sense that it was not void from the outset merely because it lacked an executed and affixed acknowledgment. However, according to the respondents, the petitioner did not have the authority to act pursuant to the power until the acknowledgment was executed and affixed to the power of attorney. *See* RSA 506:6, VII(b) (2010) ("The acknowledgment . . . need not be signed when the durable power of attorney is executed as long as it is executed prior to the [attorney-in-fact] exercising the power granted under the durable power of attorney."). Although we agree that a power of attorney that does not contain an executed and affixed acknowledgment is not void from the outset, to define "valid" in this narrow sense would be inconsistent with the accepted usage of the word. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2529-30 (unabridged ed. 2002) ("valid" means "able to effect or accomplish what is designed or intended; effective; efficacious"). Thus, to be "valid," an attorney-in-fact must be able to *use* the durable general power of attorney for its intended purposes.

■ The petitioner, by contrast, relies upon RSA 506:6, VIII(b) (2010) to argue that he was entitled to act pursuant to the durable general power of attorney despite the fact that it lacked an executed and affixed acknowledgment. We conclude that the petitioner misconstrues the meaning of the statute. RSA 506:6, VIII(b) provides: "Failure to comply with paragraph VI or VII shall not invalidate an *otherwise valid* durable power of attorney, subject to the provisions of RSA 506:7, IV(b)" (emphasis added). By its terms, this statute creates an exception to the requirements that a power of attorney contain both an executed and affixed disclosure statement and acknowledgment. However, this exception applies only to powers of attorney that are "otherwise valid." To determine whether the durable power of attorney is "otherwise valid" one must look to RSA 506:6, VIII(a) (2010), which sets forth the requirements for validity. RSA 506:6, VIII(a) states:

A power of attorney shall be valid if it:

(1) Is valid under common law or statute existing at the time of execution; or

(2) Has been determined by the court to be valid upon the filing of a petition pursuant to RSA 506:7.

■ With respect to RSA 506:6, VIII(a)(2), the petitioner does not contend that a court has determined that the power of attorney at issue is valid. And insofar as the instant proceeding may be considered to provide the occasion for such a determination, *see* RSA 506:7, RSA 506:6, VIII(a)(2) cannot plausibly be read to confer upon the courts an *ad hoc* authority to declare

valid a power of attorney if doing so would contravene other provisions of RSA 506:6. To the contrary, in deciding whether a power of attorney has been or can be validly used, courts must apply the law as specified in RSA 506:6, including the acknowledgement requirement, unless another provision of the statute specifically excepts the power of attorney in question from the need to comply with RSA 506:6, VII(a). As explained below, RSA 506:6, VIII(a)(1) provides the only possible basis for excepting a power of attorney from the requirements of RSA 506:6, VII(a), and it does not apply in this case.

█ Based upon its terms, it is apparent that the purpose of RSA 506:6, VIII(a)(1) is to function as a "grandfather" provision that serves to validate durable general powers of attorney which, although not complying with the present requirements of RSA 506:6, were valid under the governing law (either common law or statutory) in effect when they were executed. New Hampshire law did not address the use of disclosure statements or acknowledgments in connection with powers of attorney prior to 2001, when the legislature added paragraphs V through IX to RSA 506:6. *See* RSA 506:6, V-IX (Supp. 2001); *see also* Laws 2001, 257:1. However, under the 2001 legislation, the inclusion of disclosure statements and acknowledgements in powers of attorney, as provided for by paragraphs VI and VII of the statute, was discretionary rather than mandatory. RSA 506:6, VI, VII (Supp. 2001). The 2001 legislation also added paragraph VIII, which provided: "Nothing in paragraphs V-VII of this section shall render ineffective a durable power of attorney validly executed under New Hampshire law."[1] RSA 506:6, VIII (Supp. 2001).

It was not until 2003 that another statutory amendment revised paragraphs VI and VII of RSA 506:6 to make disclosure statements and acknowledgments mandatory components of durable general powers of attorney. *See* RSA 506:6, VI, VII (Supp. 2003); *see also* Laws 2003, 312:4. At the same time, the legislature amended paragraph VIII of RSA 506:6 to include subsections (a) and (b). RSA 506:6, VIII (Supp. 2003). However, the 2003 amendment included within the exception for "otherwise valid" powers of attorney created by paragraph VIII(b) only powers of attorney that lacked disclosure statements; powers of attorney that lacked an acknowledgment were not covered by the exception.[2] *Id.* In 2005, the

---

[1] Under the 2001 legislation, paragraph V was added to RSA 506:6. It stated: "An attorney in fact is not authorized to make gifts to the attorney in fact or to others unless the durable power of attorney explicitly authorizes such gifts." RSA 506:6, V (Supp. 2001); *see also* Laws 2001, 257:1.

[2] Pursuant to Laws 2003, 312:4, RSA 506:6, VIII(b) stated: "Failure to comply with paragraph VI shall not invalidate an otherwise valid durable power of attorney, subject to the provisions of RSA 506:7, IV(b)."

legislature once again amended RSA 506:6, VIII(b) to its present form, which makes clear that "otherwise valid" durable powers of attorney may include those that lack either a disclosure statement, an acknowledgment, or both. *See* Laws 2005, 71:4.

██ With the above statutory history in mind, when RSA 506:6, VII(a), VIII(a) and VIII(b) are read together, it becomes. clear that to be "otherwise valid" without a disclosure statement and/or an acknowledgment, a durable power of attorney must be one that *did not require these components to be valid at the time it was executed.* Construing the "otherwise valid" language of RSA 506:6, VIII(b) in this fashion is the only way to avoid it contradicting RSA 506:6, VI(a) and VII(a), a result that would be contrary to our settled rules of statutory interpretation. *See Appeal of Union Tel. Co.,* 160 N.H. 309, 311 (2010) ("When interpreting two statutes which deal with similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute.").

██ Because the durable power of attorney at issue in this case was executed in October 2004, after the date when an acknowledgment was a mandatory prerequisite to the use of the power, it does not qualify as "otherwise valid" within the meaning of RSA 506:6, VIII(b).[3] Consequently, the trial court did not err in granting the respondents' motion for summary judgment.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.

---

[3] The petitioner asserts that our construction of RSA 506:6, VIII(b) renders RSA 506:7, IV(b) (2010) superfluous. We disagree. While RSA 506:6, VIII(b) permits the use of powers of attorney that lack disclosure statements and/or acknowledgments if they were executed at a time when these components were not required, the "subject to the provisions of RSA 506:7, IV(b)" language of the statute serves to make clear that, although the power may be valid, gifts or transfers made pursuant to such "grandfathered" powers of attorney do not enjoy the presumption of lawfulness conferred by the first sentence of RSA 506:7, IV(b). Moreover, pursuant to the second sentence of RSA 506:7, IV(b), an attorney-in-fact acting under such a power, when challenged, must bear the burden of proving that a transfer of the principal's property made for less than adequate consideration "was authorized and was not a result of undue influence, fraud, or misrepresentation."