Coos
No. 2004-815

TERRY W. KENISON AND DIANA L. KENISON, CO-ADMINSTRATORS OF THE ESTATE OF BRODY J. KENISON

v.

ANDRE DUBOIS & a.

Argued: April 20, 2005
Opinion Issued: July 18, 2005

*McDowell & Osburn, P.A.*, of Manchester (*Joseph F. McDowell, III* and *Mark D. Morrissette* on the brief, and *Mr. Morrissette* orally), for the plaintiffs.

*Devine, Millimet & Branch, Professional Association*, of Manchester (*Robert C. Dewhirst* and *Donald L. Smith* on the brief, and *Mr. Smith* orally), for the defendants.

DALIANIS, J. The plaintiffs, Terry W. Kenison and Diana L. Kenison, co-administrators of the Estate of Brody J. Kenison, appeal a ruling of the Superior Court (*Vaughan*, J.) granting summary judgment to the defendants, Andre Dubois and the Waumbek Methna Snowmobile Club (Waumbek). On appeal, the plaintiffs argue that the trial court erred in ruling that the defendants are immune from liability under RSA 508:14, I (1997), RSA 212:34, I (2000) (amended 2003) and RSA 215-A:34, II (2000). We reverse and remand.

The record reflects the following facts. On the morning of February 26, 2001, the decedent, Brody Kenison, was riding his snowmobile on the "Corridor 5" snowmobile trail in Jefferson, when he collided with a snow-trail grooming machine (snow groomer) owned by Waumbek and operated by Dubois, resulting in his death. "Corridor 5" is a recreational trail open year-round to the public for multiple uses, including use by snowmobiles. It runs from Portland, Maine, through New Hampshire, to Montreal, Quebec, and is owned by Portland Pipeline. Waumbek is a nonprofit snowmobile club that, for over twenty years, has voluntarily maintained, groomed and developed the portion of the "Corridor 5" trail where the collision took place. Waumbek receives compensation to recover its trail-grooming expenses through a grant-in-aid program sponsored by the State of New Hampshire.

After the plaintiffs brought suit, the defendants moved for summary judgment, arguing that they are immune from liability under the recreational use statutes, RSA 508:14, I, RSA 212:34, I, and RSA 215-A:34, II. The trial court granted the defendants' motion. This appeal followed.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Estate of*

*Joshua T. v. State*, 150 N.H. 405, 407 (2003). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.*

On appeal, the plaintiffs first argue that the defendants are not immune from liability because they do not qualify as owners, lessees or occupants of land. Because we agree, we need not address the plaintiffs' other arguments on appeal.

RSA 508:14, I, provides:

> An owner, occupant, or lessee of land, including the state or any political subdivision, who without charge permits any person to use land for recreational purposes or as a spectator of recreational activity, shall not be liable for personal injury or property damage in the absence of intentionally caused injury or damage.

RSA 212:34 provides, in pertinent part:

> I. An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, trapping, camping, water sports, winter sports or OHRVs as defined in RSA 215-A, hiking, sightseeing, or removal of fuelwood, or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in paragraph III hereof.
>
> II. An Owner, lesse or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, use OHRVs as defined in RSA 215-A, sightsee upon, or remove fuelwood from, such premises . . . does not thereby:
>
> (a) Extend any assurance that the premises are safe for such purpose, or
>
> (b) Constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed, or
>
> (c) Assume responsibility for or incur liability for an injury to person or property caused by any act of such person to whom permission has been granted except as provided in paragraph III hereof.

RSA 215-A:34, II provides, in pertinent part:

It is recognized that OHRV operation may be hazardous. Therefore, each person who drives or rides an OHRV accepts, as a matter of law, the dangers inherent in the sport, and shall not maintain an action against an owner, occupant, or lessee of land for any injuries which result from such inherent risks, dangers, or hazards.

The issue before us presents questions of statutory interpretation. We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *In the Matter of Jacobson & Tierney*, 150 N.H. 513, 515 (2004). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* We review the trial court's interpretation of a statute *de novo. Remington Invs. v. Howard*, 150 N.H. 653, 654 (2004).

For the purposes of the above statutes, the parties agree that a snowmobile qualifies as an off-highway recreational vehicle (OHRV), *see* RSA 215-A:1, VI (2000). Under RSA 508:14, I, RSA 212:34, and RSA 215-A:34, II, immunity from liability is provided to a party who is an owner, lessee or occupant of the land where the accident occurred. The parties agree that the defendants were not owners or lessees of the land. Thus, for the defendants to be entitled to immunity under any of the three recreational use statutes, they must have been occupants of the land.

None of the recreational use statutes provides a definition of "occupant." When statutory terms are undefined, we ascribe to them their plain and ordinary meaning. *In the Matter of Blanchflower & Blanchflower*, 150 N.H. 226, 227 (2003). Webster's dictionary defines "occupant" in several different ways, including: (1) "one who takes the first possession of something that has no owner and thereby acquires title by occupancy"; (2) "one who takes possession under title, lease or tenancy at will"; (3) "one who occupies a particular place or premises"; and (4) "one who has actual use or possession of something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1560 (2d unabridged ed. 2002). Black's Law Dictionary defines "occupant" as either "[o]ne who has possessory rights in, or control over, certain property or premises" or "[o]ne who acquires title by occupancy." BLACK'S LAW DICTIONARY 1106 (7th ed. 1999). These varying definitions demonstrate that the term "occupant" has the potential to encompass either a broad or a narrow class of persons depending upon the context in which the term is used. An "occupant" could be someone who is on the premises, someone who is using the premises, someone who has control of the premises, someone who has a possessory interest in the premises, or someone who has title to the premises.

■ The defendants refer us to *Smith v. Sno Eagles Snowmobile Club, Inc.*, 823 F.2d 1193, 1197-98 (7th Cir. 1987) (construction approved by Wisconsin intermediate appellate court in *Hall v. Turtle Lake Lions Club*, 531 N.W.2d 636 (1988)), in which the Seventh Circuit Court of Appeals, interpreting a similar Wisconsin statute, determined that a snowmobile club qualified as an occupant because it made actual use of the property with a degree of permanence. *But see Ward v. State*, 890 P.2d 1144, 1147-48 (Ariz. 1995) (rejecting Seventh Circuit's interpretation and concluding that "occupant" must have ability to exclude persons from land or grant persons access to land). The defendants argue that we should interpret the New Hampshire recreational use statutes using this definition of "occupant." But, in arguing that we follow *Smith*, the defendants overlook a key difference between our policy of interpreting recreational use statutes and the policy employed by Wisconsin courts. We follow the policy of strictly interpreting statutes that are in derogation of the common law, *Sweeney v. Ragged Mt. Ski Area*, 151 N.H. 239, 241 (2004); Wisconsin courts do not. *See Leu v. Price County Snowmobile Trails Association, Inc.*, 695 N.W.2d 889, 893 n.6 (Wis. Ct. App. 2005) (noting that Wisconsin courts construe recreational use statutes granting immunity liberally).

Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *State v. Whittey*, 149 N.H. 463, 467 (2003). When we interpret statutes that deal with the same subject matter, we consider all of the statutes when interpreting any one of them. *See Berksdale v. Town of Epsom*, 136 N.H. 511, 515-16 (1992). Although we look to the plain and ordinary meaning of the statutory language to determine legislative intent, we will not read words or phrases in isolation; we read them in the context of the entire statute. *Franklin v. Town of Newport*, 151 N.H. 508, 509 (2004).

RSA 508:14, I, expressly states that immunity shall apply to "[an] owner, occupant, or lessee of land ... who without charge *permits* any person to use land for recreational purposes ...." (Emphasis added.) RSA 212:34, I, provides that an owner, lessee or occupant of premises owes no duty of care, while RSA 212:34, II makes it clear that if that owner, lessee or occupant *gives permission* to another to use the land, that permission shall not, under certain circumstances, create a duty of care under RSA 212:34, I. Thus, by implication, an owner, occupant or lessee is one who has the ability or authority to grant permission to use land. Though RSA 215-A:34, II contains no language specifically referencing permission, it uses the same terms as RSA 212:34 or RSA 508:14; *i.e.*, owner, occupant or lessee of land. Further, no different purpose is apparent from the statute; rather, it simply gives more detail about an owner's, occupant's, or lessee's

potential immunity regarding OHRVs. As we noted in a different context in *Estate of Gordon-Couture v. Brown*, the model recreational use statute (drafted by the Committee of State Officials on Suggested State Legislation of the Council of State Governments), which shares much in common with the New Hampshire recreational use statutes, "expressed a basic *quid pro quo* in its declaration of policy, namely, *permission* to the general public to use private land for recreational purposes in exchange for immunity from liability for resulting injuries." *Estate of Gordon-Couture v. Brown*, 152 N.H. 265, 269 (2005) (quotation omitted; emphasis added).

■ By suggesting that we adopt an interpretation of "occupant" that includes persons who do not have the ability or authority to permit access to land, the defendants overlook the statutory language and our policy of strictly interpreting statutes in derogation of the common law. For these reasons, we hold that an occupant of land must, at least, have the ability or authority to give persons permission to enter or use land.

The defendants also rely upon *Kantner v. Combustion Engineering*, 701 F. Supp. 943 (D.N.H. 1988). While *Kantner* may have ruled that defendants without the apparent ability or authority to permit access to land were entitled to immunity, *Kantner* did not specifically address whether permission is a required element of the New Hampshire recreational use statutes. More importantly, *Kantner* relied upon the broad definition of "occupant" set forth in *Smith*. *Kantner*, 701 F. Supp. at 947. As we rejected that definition above, we do not find *Kantner* persuasive.

The defendants also refer to our memorandum decision in *Fanny v. Pike Industries, Inc.*, 119 N.H. 108 (1979), in which we upheld the grant of immunity to a general contractor who was an occupant of land. The defendants point out that our opinion in *Fanny* contains little factual detail and includes no discussion of the general contractor's ability or authority to permit a person's entry onto the land. *Fanny*, 119 N.H. at 108-09. Further, neither party in *Fanny* appears to have argued that the general contractor's ability or authority, or lack thereof, to permit persons access to the land was a factor to be considered when interpreting the term "occupant." *Id.* Thus, we do not find *Fanny* helpful to this case. To the extent that it can be read to hold that an "occupant" need not have the ability or authority to give persons permission to enter or use land, it is hereby overruled.

The defendants further argue that interpreting the term "occupant" to require the ability or authority to permit access to land would make the term "occupant" "virtually indistinguishable from the term 'owner,' and,

thus, render the legislature's use of the term 'occupant' meaningless." We disagree.

The language of RSA 508:14, I, demonstrates that the legislature contemplated that there will be occupants who have the ability or authority to permit persons onto land. As discussed above, RSA 508:14, I, applies to: "An owner, occupant, or lessee of land, including the state or any political subdivision, who without charge *permits* any person to use land for recreational purposes." (Emphasis added.) The legislature must have contemplated at least some occupants, other than owners or lessees, who have the ability or authority to permit persons onto land. Such occupants might include a contractor who has responsibility for access to land and maintenance of a project site or an organization that manages a city-owned swimming pool and has the ability to permit or deny access to the land, *see Ward*, 890 P.2d at 1148, or a spouse who resides on land but does not hold title to that land. Thus, we do not find the defendants' argument persuasive.

The defendants also argue that interpreting the statute so as not to include snow groomers would be inconsistent with the purpose of the statute—to make more land available for recreational uses. The defendants argue that without snow groomers, the "snowmobile trails would not be available for public use" because, presumably, such land, though accessible, would not be usable by snowmobiles. We disagree with the defendants' argument that our interpretation is inconsistent with the purpose of the statute.

While a statute may abolish a common law right, there is a presumption that the legislature has no such purpose. *Sweeney*, 151 N.H. at 241. If such a right is to be taken away, it must be expressed clearly by the legislature. *Id.* As stated above, these immunity provisions are strictly construed. *Id.* The only purpose clearly expressed in the statutes is the purpose to encourage persons to permit people to enter their land for recreational uses. That purpose is fully served by our holding in this case. The activities of snow groomers may facilitate the use of land for certain recreational uses such as snowmobiling, but the statutes, strictly construed, are intended to immunize those who permit access to land, not those who simply facilitate its use after permission has been granted.

■ Because we conclude that, in order to qualify for immunity under the recreational use statutes, one must at least have the ability or authority to permit persons to use or enter the land, the defendants are not occupants for the purposes of the recreational use statutes. The defendants had neither the ability nor the authority to make land available for recreational purposes in the manner contemplated by the legislature; rather, they

merely had the ability and authority to make that land more easily usable than it might otherwise be for recreational purposes.

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.