Conway Family Division
No. 2010-555

## In the Matter of Lisa McArdle and Patrick McArdle

Submitted: June 16, 2011
Opinion Issued: September 22, 2011

Lisa McArdle, by brief, *pro se.*

*The Law Offices of Kurt D. DeVylder, PLLC,* of Wolfeboro (*Kurt DeVylder* on the brief), for the defendant.

CONBOY, J. The defendant, Patrick McArdle, appeals an order of the Conway Family Division (*Albee,* J.) granting a final domestic violence protective order to the plaintiff, Lisa McArdle. *See* RSA 173-B:5, I(a) (Supp. 2010). We affirm.

The trial court could have found the following facts. As of June 8, 2010, the parties had been married for twenty-three years, had four children, and were living together in Madison. On that day, the plaintiff was in the kitchen of the parties' home with their children and a friend. The defendant entered the kitchen, yelled at the plaintiff, and threw some papers at her. The papers consisted of notes and an email that the plaintiff had written about the parties' relationship. He told her that the notes had upset him. She picked up the papers and put them in a bag.

Later that evening, the plaintiff was in the bedroom of the parties' eleven-year-old daughter, saying good night to her, when the defendant entered the room carrying an unlit propane torch. He demanded that she give the papers back to him. She refused. They continued to argue as the defendant followed the plaintiff from room to room, carrying the propane torch. The plaintiff later testified that the defendant was distraught and angry and that his anger escalated throughout the incident. The plaintiff called her counselor, who suggested burning the papers in the wood stove in the home. The defendant agreed, the plaintiff gave him the papers, and he burned them in the stove.

After the papers were burned, the defendant did not say anything and locked himself in a bathroom. The plaintiff then called the Madison police, who responded. The next day, the plaintiff filed a domestic violence petition against the defendant in which she described the propane torch incident.

The day before the hearing on the domestic violence petition, the plaintiff moved to amend the petition with allegations of three prior incidents: (1) the defendant had admitted to "flip[ing] out in a rage type thing" at work, pushing over a three-foot staging and portable bathrooms, and smashing holes in sheetrock; (2) in the summer of 2009, the defendant had thrown a

large rock at the back of their son's car, damaging the car; and (3) at some point in their marriage, during an argument between the parties, the defendant had thrust his hand through a window, breaking his finger. The motion to amend the petition was not accompanied by an affidavit attesting to the facts under oath.

The defendant objected to the plaintiff's motion to amend the petition on the basis that she had not attested to the factual allegations. *See* FAM. DIV. R. 1.26 ("The court will not hear any motion based upon facts unless the facts are verified by affidavit, or are already contained in the court record."). The trial court addressed the defendant's objection by having the plaintiff attest to the facts alleged at the commencement of the hearing.

Following the hearing, the trial court granted the plaintiff's petition, concluding that the defendant had committed criminal threatening, *see* RSA 631:4, I(a) (2007 & Supp. 2010), and presented a credible threat to the plaintiff's safety. The trial court found that the defendant "purposely placed her in fear of imminent physical contact through his physical conduct by repeatedly demanding she turn over papers while holding a propane torch and following the plaintiff from room to room inside the home." The trial court further found:

> The defendant has a history of angry, destructive behavior such as throwing a large stone through the rear window of his son's car, pushing over 3-f[oo]t high staging at work, and most recently during the incident of 6/8/2010 which lasted more than 3 hours, the defendant's anger escalated more and more as time went on causing the plaintiff to be frightened for herself and her children. This fear is validated by the fact that the defendant entered the eleven-year-old child's bedroom . . . with the propane torch held up in his hand, angry and very distraught demanding the papers.

On appeal, the defendant argues that the trial court erred by admitting evidence of which he did not have proper notice, basing its final order of protection upon such evidence, and considering evidence of incidents that were too remote in time.

Resolution of this case requires us to interpret RSA chapter 173-B, Protection of Persons from Domestic Violence. We review the trial court's interpretation of a statute *de novo. Kenison v. Dubois*, 152 N.H. 448, 451 (2005). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *Dalton Hydro*

*v. Town of Dalton,* 153 N.H. 75, 78 (2005). We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.*

We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. *State v. Forbes,* 157 N.H. 570, 572 (2008).

■ The purpose of RSA chapter 173-B "is to preserve and protect the safety of the family unit for all family members by entitling victims of domestic violence to immediate and effective police protection and judicial relief." *Walker v. Walker,* 158 N.H. 602, 605 (2009) (quotation, citation, and ellipsis omitted). Pursuant to RSA 173-B:3, I (Supp. 2010), "[a]ny person may seek relief . . . by filing a petition . . . alleging abuse by the defendant." "Upon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of abuse." RSA 173-B:5, I (Supp. 2010). "Abuse" is defined as having two elements: (1) commission or attempted commission of one or more of several criminal acts, including criminal threatening as defined in RSA 631:4; and (2) a determination that "such conduct constitutes a credible threat to the plaintiff's safety." RSA 173-B:1, I (Supp. 2010).

We first address the defendant's contention that it was error for the trial court to permit the plaintiff to attest to the facts alleged in her motion to amend at the hearing, and then to consider those facts in ruling on the petition. Under Family Division Rule 1.2, the court may waive the application of any rule, except where prohibited by law, as good cause and justice require. The defendant argues that the trial court was prohibited by law from waiving the attestation requirement.

■ In support of his argument, the defendant selectively quotes RSA 173-B:3, IV as follows: "All such petitions shall contain the following words: I swear that the foregoing information is true and correct to the best of my knowledge." The entire section, however, provides as follows:

> The clerks of the district and superior courts shall supply forms for petitions and for relief under this chapter designed to facilitate pro se proceedings. All such petitions shall contain the following words: I swear that the foregoing information is true and correct to the best of my knowledge. I understand that making a false statement on this petition will subject me to criminal penalties.

RSA 173-B:3, IV. We cannot conclude, based on this statutory language, that it was the intent of the legislature to prohibit the court from waiving

the attestation requirement for the petition form under circumstances where the plaintiff later attests to the facts at the hearing on the petition.

The defendant also argues that, because the allegations contained in the motion to amend were unverified, he did not have proper notice of them. "Under the plain terms of the statute, facts alleged against the defendant must be supplied in advance of the hearing on the petition. Should the need arise to supplement or amend the petition to modify the facts alleged, this, too, must be done prior to the hearing so that the defendant has an opportunity to respond." *In the Matter of Aldrich & Gauthier*, 156 N.H. 33, 34-35 (2007).

The defendant relies on *Ossipee Auto Parts v. Ossipee Planning Board*, 134 N.H. 401 (1991), in which we held that the superior court could not, under Superior Court Rule 57, consider facts not verified by an affidavit when ruling on a motion. However, *Ossipee* is distinguishable from this case for two reasons. First, here, the defendant received a copy of the motion to amend the day before the hearing and, therefore, received notice of the subject allegations. Second, the plaintiff attested to the factual allegations in the motion to amend at the start of the hearing. Moreover, the Family Division is empowered under Family Division Rule 1.2 to waive its rules when good cause and the interests of justice may require. Under these circumstances, we do not believe that the trial court's ruling was clearly untenable or unreasonable to the prejudice of the defendant's case. Thus, we hold that the trial court did not unsustainably exercise its discretion in admitting and considering the facts alleged in the plaintiff's motion to amend.

Next, the defendant argues that the trial court erred in considering the events detailed in the motion to amend because they are stale. *See Walker*, 158 N.H. at 608 ("[i]ncidents which are too distant in time and non-specific cannot support a finding of abuse under RSA chapter 173-B" (quotations and citation omitted)); *Fillmore v. Fillmore*, 147 N.H. 283, 286 (2001) (holding that two incidents of physical abuse occurring eight and eleven years prior to the petition and a months-old threat to make the plaintiff's life "a living hell" were insufficient to show *current* abuse). The defendant characterizes the trial court's decision that the defendant posed a credible threat to the plaintiff's safety as based "largely" and relying "heavily" on the allegations of prior incidents. We disagree. The following facts, cited by the trial court, support the finding that the defendant's conduct on June 8, 2010, constituted a credible threat to the plaintiff's safety: (1) the confrontation lasted for more than three hours; (2) the defendant's anger escalated during the course of the confrontation; (3) the

defendant entered his eleven-year-old child's bedroom demanding the papers with the propane torch raised; and (4) the defendant was "angry and very distraught." Thus, the court's ruling was based on the June 8, 2010 incident, which occurred the day before the plaintiff filed the domestic violence petition.

Further, the prior incidents were relevant to the trial court's finding that the defendant had committed criminal threatening and posed a credible threat to the plaintiff's safety. "A person is guilty of criminal threatening when . . . [b]y physical conduct, the person purposely places or attempts to place another in fear of imminent bodily injury or physical contact." RSA 631:4, I(a). The court found that the defendant's "history of angry, destructive behavior such as throwing a large stone through the rear window of his son's car [and] pushing over 3-f[oo]t high staging at work" supported its conclusion that the plaintiff was in fear of physical contact from the defendant when he followed her from room to room, repeatedly demanding the papers, while holding a propane torch.

The defendant also argues that the trial court erred in finding him to be a credible threat to the plaintiff because no evidence was introduced to show that he had been violent toward the plaintiff. However, the statutory definition of "abuse" does not require the defendant to have committed a violent act. *See* RSA 173-B:1, I. It requires the defendant to have committed one of the enumerated offenses, including criminal threatening, and to pose a credible threat to the plaintiff's safety. *Id.* We disagree with the defendant's contention that "[t]he incident of June 8, 2010, though admittedly involving an unlit fire-starting device, should not be taken for more than what it was: a request to dispose of upsetting notes which the [plaintiff] had written about the [defendant] and the parties' relationship." The trial court found, and the defendant does not dispute on appeal, that he committed the offense of criminal threatening, *see* RSA 631:4, and, as outlined above, the evidence supports the trial court's finding that the defendant's conduct constituted a credible threat to the plaintiff's safety.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and LYNN, JJ., concurred.