# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0009, <u>Keith Garrett v. Laurie Garrett</u>, the court on May 20, 2015, issued the following order:**

Having considered the defendant's brief and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. See <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Laurie Garrett, appeals a domestic violence final order of protection granted by the Circuit Court (<u>Sadler</u>, J.) in favor of the plaintiff, Keith Garrett. See RSA 173-B:5, I (Supp. 2014). She challenges the trial court's finding that she engaged in "abuse" for purposes of RSA 173-B:1, I (Supp. 2014), arguing that the evidence was insufficient to prove that she committed an enumerated crime, and that her conduct constituted a credible present threat to the plaintiff's safety. She further argues that the trial court erred as a matter of law by failing to make a specific finding that she acted with the requisite state of mind under RSA 631:2-a, I(a) (2007), and by considering prior acts of domestic violence.

To be entitled to a domestic violence final order of protection, the plaintiff must establish by a preponderance of evidence that the defendant engaged in "abuse." RSA 173-B:5, I. "Abuse" means the commission or attempted commission of one or more enumerated crimes when the criminal conduct "constitute[s] a credible present threat" to the plaintiff. RSA 173-B:1, I; see <u>In the Matter of McArdle & McArdle</u>, 162 N.H. 482, 485 (2011). The trial court "may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his or her safety or well-being." RSA 173-B:1, I. "A credible present threat requires more than a generalized fear for personal safety." <u>Hurley v. Hurley</u>, 165 N.H. 748, 751 (2013) (quotation omitted).

We review sufficiency of the evidence claims as a matter of law, upholding the trial court's findings and rulings unless they lack evidentiary support or are tainted by legal error. <u>Walker v. Walker</u>, 158 N.H. 602, 608 (2009). We view the evidence in the light most favorable to the plaintiff and defer to the trial court's judgments as to the credibility of the witnesses and the weight of their testimony. <u>Id</u>.

Viewed most favorably to the plaintiff, the evidence here establishes that at approximately 1:00 a.m. on October 18, 2014, the defendant returned home,

woke the plaintiff up, and attempted to continue an argument in which the parties had been engaged earlier in the evening. When the defendant approached the plaintiff in an aggressive manner, the plaintiff acted as though he were recording her on his cell phone. According to the plaintiff, he had been sleeping with his cell phone nearby ever since an incident that occurred on September 15, 2014 (September 15 altercation), during which the defendant assaulted him. The plaintiff's purpose in sleeping with his cell phone was to "record any possible acts of aggression," or otherwise "mitigate any sort of arguments or anything like that that may happen." During the October 18 incident, however, the plaintiff did not actually record the defendant.

The defendant responded to the feigned recording of her by calling him obscene names and coming at him in an angry manner with both hands raised. The defendant "grab[bed the plaintiff's] cell phone and kind of like a tug of war happened. You know, there's a lot of pawing. You know, she was hitting [his] hands a little bit trying to get [his] cell phone free." As a result, the cell phone fell to the floor, and when the plaintiff sat up and attempted to retrieve it, the defendant fell. The defendant got up and began "reaching and scratching and striking [the plaintiff] . . . around the neck. She was reaching around [his] neck in an attempt to possibly choke [him]." The defendant stopped the attack after the plaintiff relaxed his arms, stopped reaching for the cell phone, told the defendant that she was "not hurting [him], . . . not choking [him], and [that he was] not going to hit [her] back," and asked the defendant what she "want[ed] to come of this."

The defendant then called the police. She asserted that she had fallen during the altercation because the plaintiff had pushed her into a coffee table. When officers arrived to investigate what had occurred, they discovered scratches and markings on the plaintiff's neck. Ultimately, the defendant, but not the plaintiff, was taken into custody and charged with assault.

The plaintiff testified that the September 15 altercation similarly arose out of an argument. The plaintiff testified that, during the argument, the defendant twice threw a hardcover book at him, chased him out of the house while he was barefoot and in his underwear, locked him out of the house, and punched him in the jaw when he returned. The plaintiff testified that he did not report the September 15 altercation to the police because he was concerned about the wellbeing of the parties' children and that he might be arrested.

Following the September 15 altercation and prior to the October 18 altercation, the defendant sent the plaintiff a text message concerning a dispute in which she told him that she "know[s] how to start trouble if [she] wants," and that she is "much more aggressive than this." The plaintiff testified that, after the October 18 altercation, he was concerned for his safety,

2

and that, without a restraining order, he feared the defendant would attack him again.

In granting the protective order, the trial court checked the box on the preprinted form finding that the defendant had engaged in "[a]ssault or reckless conduct as defined by RSA 631:1 through RSA 631:3." Specifically, the trial court found that the defendant had committed the abuse by "caus[ing] unprivileged physical contact when she grabbed at [the plaintiff's] cell phone and hit his hand and then grabbed at his throat." The trial court further found that the defendant's conduct constituted a present credible threat to the plaintiff's safety because her "violence [was] escalating such that [she] has now been charged criminally." This appeal followed.

At the outset, we reject the defendant's argument that the trial court erred by not specifically finding that she had acted with the requisite state of mind. We note that the defendant did not bring this purported deficiency in the trial court's order to its attention in a motion for reconsideration. Fam. Div. R. 1.26(F) (any issues which could not have been presented to the trial court prior to its decision must be presented to it in a motion for reconsideration); N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). Even if she had preserved this argument, however, the defendant cites no authority requiring the trial court to make express findings as to each of the elements of the underlying crimes constituting abuse for purposes of RSA 173-B:1, I. Nor are we aware of any such authority.

We have construed RSA 173-B:5, I, to "require that a trial court . . . make a specific finding of criminal conduct in order to issue a final restraining order against a defendant." Fillmore v. Fillmore, 147 N.H. 283, 285 (2001). Here, that is precisely what the trial court did by finding that the defendant engaged in "[a]ssault or reckless conduct as defined by RSA 631:1 through RSA 631:3" when she "caused unprivileged physical contact [by] grabb[ing] at [the plaintiff's] cell phone and hit[ting] his hand and then grabb[ing] at his throat." "Assault or reckless conduct as defined in RSA 631:1 through RSA 631:3" are enumerated predicate acts that may give rise to a finding of "abuse." RSA 173-B:1, I(a). "Simple assault" includes "[p]urposely or knowingly caus[ing] bodily injury or unprivileged physical contact to another." RSA 631:2-a, I(a). Nothing in Fillmore requires express findings as to each of the elements of the criminal conduct. See Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 586 (2004) (the trial court is presumed to have made all subsidiary findings necessary to support its general finding).

Likewise, we reject the defendant's argument that the trial court, in finding that the defendant's conduct constituted a credible present threat because her violence "was escalating such that [she] has now been charged criminally," erred by considering prior incidents. As with the previous

3

argument, the defendant failed to preserve this argument by failing to raise it in a motion for reconsideration. Fam. Div. R. 1.26(F); Butland, 147 N.H. at 679. Even if she had preserved it, however, RSA 173-B:1, I, expressly authorizes the trial court to consider "evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his or her safety or well-being." Nothing in this provision requires that each individual event constituting the pattern cause the plaintiff to fear for his or her safety at the time that the event occurs.

Here, the evidence establishes that approximately one month prior to the October 18 incident, the defendant twice threw a hardcover book at the plaintiff and punched him in the jaw during the course of an argument. During the same time period, she sent the plaintiff a text message warning that she "know[s] how to start trouble" and is "much more aggressive." The plaintiff testified that in light of the similar September 15 altercation, the events that occurred on October 18 caused him to fear a further assault. Under the circumstances, the trial court reasonably could have found "an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his . . . safety or well-being."

We next address the defendant's challenges to the sufficiency of the evidence. The defendant argues that the evidence was insufficient to establish that she purposely or knowingly caused unprivileged physical contact to him because the cell phone was an object and not his person, because there was no testimony that she grabbed his throat, and because there was no evidence that she acted knowingly. She further argues that there was no evidence that she demonstrated a "credible" threat to the plaintiff. We disagree.

"Unprivileged physical contact" for purposes of RSA 631:2-a includes all physical contact not justified by law or consent; it is not limited to acts of violence. State v. Blunt, 164 N.H. 679, 684 (2013). Although the cell phone itself was not "another" within the meaning of RSA 631:2-a, the plaintiff was holding it at the time that the defendant "grabbed" it and caused a "tug of war" and "a lot of pawing" to ensue. Thus, the trial court reasonably could have found that the defendant "caused unprivileged physical contact when she grabbed at" the cell phone. Moreover, although the plaintiff may not have stated specifically that the defendant "grabbed at his throat," he testified that she was "reaching and scratching and striking [him] . . . around the neck," and was "attempt[ing] to possibly choke" him. The evidence establishes that the defendant had scratches and marks on his neck as a result of the attack. Under these circumstances, the trial court reasonably could have found that the defendant caused unprivileged physical contact by "grabb[ing] at [the plaintiff's] throat."

4

With respect to the defendant's state of mind, we have repeatedly observed that "persons rarely explain to others the inner workings of their minds or mental processes." State v. Tayag, 159 N.H. 21, 24 (2009) (quotation omitted). Here, the trial court reasonably could have inferred from the defendant's conduct, in light of all of the circumstances, including the scratches and marks that she caused, that she acted knowingly. See id.

Finally, there was more than ample proof that the defendant posed a credible present threat to the plaintiff's safety. The evidence establishes two separate altercations during a span of approximately one month in which the defendant physically assaulted the plaintiff during the course of an argument, and a third incident in which she sent him a threatening text message. The most recent assault caused physical marks to appear on the plaintiff's body, and led to criminal charges. The plaintiff testified that he feared for his safety, and was concerned that the defendant would assault him again. Although the defendant disputed at trial that a photograph of the plaintiff taken after the October 18 assault showed scratches, she conceded that it showed "something on his neck." We conclude that the trial court reasonably could have found that the defendant's conduct constituted a credible present threat to the plaintiff's safety.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**