# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0414, <u>State of New Hampshire v. Jonathan A. Perfetto</u>, the court on September 8, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The State appeals an order of the Superior Court (<u>Anderson</u>, J.) granting the motion of the defendant, Jonathan A. Perfetto, for transfer pursuant to RSA 651:10 (2016) from the Montana State Prison to the Secure Psychiatric Unit (SPU) of the New Hampshire State Prison. See Sup. Ct. R. 7. We reverse and remand.

The following facts are supported by the record. In 2011, the defendant pled guilty to five counts of possession of child sexual abuse images and seven counts of failure to register online identifiers. RSA 649-A:3 (2009); RSA 651-B:4-a (2009). The defendant received two consecutive ten to twenty-year committed sentences and a number of suspended sentences. In 2017, the defendant was transferred to the Montana State Prison under the Interstate Corrections Compact. See RSA 622-B:2 (2001).

In November 2020, the defendant, self-represented, moved for transfer to the SPU. He argued that he was in need of mental health treatment not provided at the Montana State Prison. The trial court denied the motion, noting that the defendant had not cited any authority for the transfer. After the defendant filed an appeal in 2021, the State moved to stay the appeal so that the defendant could renew his motion in the trial court with the assistance of counsel and with citation to RSA 651:10. RSA 651:10 provides:

> The governor and council or the superior court may discharge any such person from prison, or shall transfer any prisoner who is insane to the secure psychiatric unit, to be kept at the expense of the state, whenever they are satisfied that such discharge or transfer will be conducive to the health and comfort of the person and the welfare of the public.

This court granted the motion to stay. On June 15, 2022, the defendant filed in the trial court a memorandum of law in support of his motion for transfer to the SPU. To his motion he attached an expert evaluation from Daniel Lampignano, a certified psychiatrist. In his report, Lampignano diagnosed the defendant as having bipolar 1 disorder, borderline personality

disorder, and anti-social personality traits. Lampignano opined that the defendant's mental illnesses would benefit from treatment not available at the Montana State Prison. The State objected to this motion.

The trial court held a hearing on June 21, 2022. The State, represented by an assistant county attorney, argued that RSA 651:10 does not address "specific mental health conditions outside of the scope of when the person's been found [not] guilty by reason of insanity [NGRI]" and that, absent an NGRI determination, the statute does not apply. The State asserted that it was "not disputing that [the defendant is] in need of mental health services" but that because no new criminal offense had been committed, the defendant is not "actually insane." When asked if the State had any questions for Lampignano about his report, counsel replied: "No, I don't. I actually stipulate to the findings that are made in the report." The trial court clarified:

> THE COURT: So your argument is really a pure legal argument. You're saying that – the State's argument is simply that because he's not in the system by virtue of an NGRI plea, [RSA] 651:10 is inapplicable. That's it?
>
> [STATE]: Correct.

Defense counsel then sought clarification:

> [DEFENSE COUNSEL]: I want to be clear. I think the State stipulated to a finding that the doctor is an expert and to enter his report?
>
> THE COURT: He's stipulating moreover to the findings in his report, which is essentially a stipulation that there's a pressing mental health issue that warrants transfer to SPU, and that he won't receive the benefits in Montana that he's receiving – will receive at SPU. That's, in short, what's being included in the doctor's report. And so the question then becomes simply whether or not the statute applies.

The State did not object to this characterization of its argument. The trial court excused Lampignano from the hearing.

The trial court granted the defendant's motion to transfer. In its order, the trial court stated that "[t]he State thus agreed during the June 21, 2022 hearing that Defendant should be deemed insane for purposes of RSA 651:10 but maintained that the statute does not apply to Defendant because he was never found not guilty by reason of insanity." The trial court rejected the State's legal argument and concluded that "[a]s the State has chosen not to challenge Defendant's assertion that he meets the definition of 'insanity' under RSA 651:10 or Lampignano's conclusion that Defendant will not receive adequate services at the Montana State Prison, the Defendant is entitled under RSA 651:10 to the transfer to S.P.U. that he seeks." The State did not file a motion to reconsider. This appeal by the State followed. After our acceptance of this appeal, we dismissed the defendant's 2021 appeal as moot.

On appeal, the State first argues that the trial court "erred in finding that the [assistant] county attorney agreed that the defendant should be deemed insane under RSA 651:10." (Capitalization and bolding omitted.) The State further argues that the trial court erred: "(1) in granting the defendant's motion to transfer without deciding whether the defendant was, in fact, 'insane' within the meaning of RSA 651:10; (2) in finding that the defendant is 'insane' based on the psychiatric report admitted at the hearing; and (3) in concluding that the term 'insane' within RSA 651:10 meant nothing more than the presence of a mental illness that would benefit from additional treatment available at the Secure Psychiatric Unit." (Capitalization and bolding omitted.) Similarly, the State argues that the trial court erred in granting the motion to transfer because the defendant failed to present evidence that transfer to the SPU was "conducive to the health and comfort of the person and the welfare of the public" as required by RSA 651:10. Finally, the State argues that the trial court erred "when it did not comply with New Hampshire Rule of Criminal Procedure 29(j), by providing notice to the warden so that the warden could file a response to the defendant's motion to transfer and to participate in the hearing on the motion." (Capitalization and bolding omitted.)

The defendant contends that: (1) "none of the arguments advanced by the State on appeal were preserved"; (2) "the Superior Court accurately understood the scope of the State's stipulation at the June 21 hearing"; (3) "on the merits, the Superior Court sustainably concluded that Perfetto is insane within the meaning of RSA 651:10, and that Perfetto's health and comfort, and the interests of the public, require his return to SPU"; and (4) "applying plain error review, this Court must reject the State's Rule 29(j) argument."

Ordinarily, we will not review arguments that were not timely raised before the trial court because trial courts should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court. Camire v. Gunstock Area Comm'n, 166 N.H. 374, 377 (2014) (citation omitted). This rule, however, is not absolute. Id. As we have previously recognized, preservation is a limitation on the parties to an appeal and not the reviewing court. Id. Resolving this appeal requires that we interpret RSA 651:10 and New Hampshire Rule of Criminal Procedure 29(j). We review the trial court's interpretation of both the statute and the rule de novo. St. Onge v. Oberten, LLC, 174 N.H. 393, 395 (2021); State v. Munroe, 173 N.H. 469, 472 (2020). Additionally, this case presents issues of public concern, including the process and criteria for admission to the SPU, the impact that transferring the defendant may have on staffing and patient care at the SPU, and the well-being of the defendant himself. In light of these concerns, we will consider the State's arguments and the defendant's counter-arguments. See Camire, 166 N.H. at 377.

We turn first to the State's arguments under RSA 651:10. When engaging in statutory interpretation, we first look to the language of the statute

itself, and, if possible, construe that language according to its plain and ordinary meaning. St. Onge, 174 N.H. at 395. We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We also construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. However, we do not construe statutes in isolation; instead, we attempt to construe them in harmony with the overall statutory scheme. Id. Additionally, we construe provisions of the Criminal Code "according to the fair import of their terms and to promote justice." RSA 625:3 (2016).

In its order transferring the defendant, the trial court concluded: "As the State has chosen not to challenge Defendant's assertion that he meets the definition of 'insanity' under RSA 651:10 or Lampignano's conclusion that Defendant will not receive adequate services at the Montana State Prison, the Defendant is entitled under RSA 651:10 to the transfer to S.P.U. that he seeks." The State argues on appeal that the trial court failed to apply the statutory requirements of transfer to the SPU as established in RSA 651:10. We agree.

By its terms, RSA 651:10 creates a two-part test under which a prisoner is eligible for transfer to the SPU. First, the prisoner must be "insane" and, second, the transfer must be "conducive to the health and comfort of the person and the welfare of the public." RSA 651:10. We address each requirement in turn.

With respect to the first part of the test, we do not agree that the defendant's mental illness, as diagnosed by Lampignano, is sufficient to establish that the defendant is "insane" for the purposes of RSA 651:10. As used in this statute, the term is a criterion for admission to the SPU, a treatment facility within the state prison. Although RSA 651:10 does not define the term "insane," other statutes addressing admission or renewal of admission to the SPU require more than a diagnosis of a mental disorder. For example, RSA 651:8-b, which addresses those found not guilty by reason of insanity, provides for commitment to the SPU if "the acquitted person is presently suffering from a mental disease or defect as a result of which his or her release would create a substantial risk of bodily injury to himself or herself or another, or serious damage to the property of another." RSA 651:8-b, IV (2016). RSA 651:11-a provides that a commitment to the SPU may be renewed upon "clear and convincing evidence that the person suffers from a mental disorder and that it would be dangerous for [the patient] to go at large." RSA 651:11-a, I (2016). Likewise, RSA 622:45, which also addresses admission to the SPU, states:

> Any person subject to an involuntary admission to the state mental health services system pursuant to RSA 135-C or any person subject to

4

involuntary admission pursuant to RSA 171-B may at any time be transferred to the unit <u>upon a determination that the person would present a serious likelihood of danger to himself or to others</u> if admitted to or retained in a receiving facility in the state mental health services system.

RSA 622:45, I (2001) (emphasis added).

Similarly, the Department of Corrections' regulations provide that an inmate who is "[c]lassified at level BH-5" and who "is a danger to self or others" is a candidate for transfer to the SPU. <u>N.H. Admin. R.</u>, Cor 410.02(a)(1)-(2); <u>see also</u> <u>N.H. Admin. R.</u>, Cor 406.05 (explaining that a rating of BH-5 on the behavioral health assessment constitutes "severe impairment due to psychiatric illness . . . where residents . . . would meet the criteria used in voluntary or involuntary transfer . . . to a psychiatric facility").

These provisions establish that admission to the SPU must be premised on a finding that the individual has a mental illness and presents a serious likelihood of danger to himself or to others as a result of his mental illness. We construe "insane" as used in RSA 651:10 in this context and conclude it would be anomalous for that statute to depart from this standard. <u>See</u> <u>Kenison v. Dubois</u>, 152 N.H. 448, 452 (2005) ("When we interpret statutes that deal with the same subject matter, we consider all of the statutes when interpreting any one of them.").

At the hearing, the assistant county attorney stipulated "to the findings that are made in [Lampignano's] report." Lampignano's report set forth three findings: (1) that the defendant is mentally ill, having been diagnosed with bipolar 1 disorder, borderline personality disorder, and anti-social personality traits; (2) that he would benefit from group therapy; and (3) that it is "unlikely he will experience similar benefit should he be limited to the services currently available at Montana State Prison." These findings were the bases for the trial court's conclusion that the defendant is eligible for a transfer. Therefore, because Lampignano did not find that the defendant presents a serious likelihood of danger to himself or to others, we conclude that the trial court erred in finding the defendant "insane" for the purposes of RSA 651:10.

With respect to the second part of the test, the State argues that the defendant failed to present evidence that transfer to the SPU was "conducive to the health and comfort of the person and the welfare of the public" as required by RSA 651:10. We agree. Relying on Lampignano's report, the trial court concluded that there was a lack of adequate services at the Montana State Prison. Lampignano did not address the availability of adequate treatment at the SPU, nor did he opine about the appropriateness of SPU placement. <u>See</u> RSA 651:10; <u>see</u> <u>also</u> <u>N.H. Admin. R.</u>, Cor 410.02(a)(3) ("A resident shall be a candidate for transfer to the (SPU) if the resident is . . . [c]ertified by a

psychiatric provider as needing management or treatment in a secure psychiatric facility . . . .").  Based on our review of the record, we conclude that it is devoid of evidence addressing the statute's second requirement.  Thus, the trial court's determination that the defendant had satisfied his burden with respect to the second part of RSA 651:10's test was erroneous.

Finally, we address the State's argument that the defendant was required to provide notice to the warden of the state prison because the motion sought to change the defendant's "custody status" under New Hampshire Rule of Criminal Procedure 29(j).  The defendant contends that "the rule applies to persons seeking to reduce, suspend, or amend a sentence" and the defendant "did not seek any reduction, suspension, or amendment of his sentence."  The defendant explains that "[i]f granted, his motion would leave unchanged not only his sentence but also his custody status, as he would remain imprisoned" and "[a]ll that would change is the location of that imprisonment[.]"

Interpretation of a court rule presents a question of law.  Munroe, 173 N.H. at 472.  Rule 29 is captioned "Sentencing Procedures" and Rule 29(j) is captioned "Reduction, Suspension or Amendment of Sentence."  We do not construe the defendant's motion as seeking "to suspend, amend, reduce or otherwise change [his] custody status."  N.H. R. Crim. P. 29(j).  Instead, he seeks admission to the SPU, a treatment facility within the state prison.  Accordingly, Rule 29(j) does not apply to the defendant's motion.  Our conclusion is without respect to any other notice requirements that may exist under these circumstances.

For the foregoing reasons, we reverse the trial court's order requiring transfer of the defendant to the SPU, and remand for further development of the record.  The trial court shall then determine on remand whether the defendant has satisfied his burden of proving both requirements of RSA 651:10.

Reversed and remanded.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**